**COLUMBIA CASUALTY COMPANY,**
**Plaintiff,**

v.

**CONSOLIDATED SHIPPING CO. et al.,**
**Defendants.**

**Civ. A. No. 8557.**

United States District Court
E. D. Louisiana,
New Orleans Division.

Nov. 24, 1967.

Kathleen Ruddell, Asst. U. S. Atty., for the United States.

Edward F. Wegmann, New Orleans, La., for Calmes Engineering & Shipyard Co.

John D. Lambert, Jr., New Orleans, La., for Northern Illinois Steel Co.

RUBIN, District Judge:

## FINDINGS OF FACT

1. On November 25, 1958, Columbia Casualty Company ("Columbia") filed suit asking for a declaratory judgment that it was not liable on a contract bond issued on May 13, 1958, to cover construction to be performed by Consolidated Shipping Company for Louisiana Shipbuilding Corporation ("Louisiana"). The complaint also sought to interplead several claimants on the bond, one of the claimants being Calmes Engineering & Shipyard Company, Inc. ("Calmes").

2. On December 1, 1958, Louisiana filed a petition under Chapter XI of the Bankruptcy Act, listing Calmes as a creditor claiming a lien on the assets of Louisiana. The bankruptcy action and the declaratory judgment and interpleader action were ultimately consolidated, and the claims of the present parties are to funds that were found in the consolidated action to be due Calmes.

3. By January, 1959, Edward F. Wegmann, attorney for Calmes, had begun actively prosecuting Calmes' claim against Louisiana. The claim amounted to more than $60,000. He rendered services of an extensive nature over a period of seven years; and, as a result, the sum of $30,467.78 was determined by Louisiana's trustee as the amount to be paid Calmes. This amount was deposited in the registry of the Court so that the Court could decide in what order competing claims to it should be paid.

4. The claimants, and the events by virtue of which they claim priority, are as follows:

A. The United States assessed taxes and penalties against Calmes of $21,568.26 before July 1, 1958. As of the date of filing of the tax liens, the total balance due on these was $16,573.06.[1]

1. The following table sets out the various assessments made by the United States and the total claimed to be due the United States as of January 28, 1964:

| Date of Assessment | Date of Filing | Amount of Assessment | Principal Balance Due |
|---|---|---|---|
| (1) February 14, 1958 | March 19, 1958 | $ 1,018.16 | $ 1,018.16 |
| (2) February 21, 1958 | March 19, 1958 | $10,331.58 | $ 5,336.38 |
| (3) February 21, 1958 | March 19, 1958 | $ 171.60 | $ 171.60 |
| (4) April 25, 1958 | May 15, 1958 | $10,046.92 | $10,046.92 |
| (5) August 22, 1958 | October 8, 1958 | $ 3,297.56 | $ 2,674.32 |
| (6) August 29, 1958 | October 17, 1958 | $ 1,730.41 | $ 1,730.41 |
| (7) February 27, 1959 | September 18, 1963 | $ 200.42 | $ 200.42 |

Total Balance Due With Statutory
Additions As of January 28, 1964

| | |
|---|---|
| (1) | $ 1,381.11 |
| (2) | $ 7,224.28 |
| (3) | $ 232.72 |
| (4) | $13,518.06 |
| (5) | $ 3,542.30 |
| (6) | $ 2,327.28 |
| (7) | $ 259.32 |
| Lien fees | $ 17.00 |
| **TOTAL** | **$28,502.07** |

B. Northern Illinois Steel Company ("Northern") obtained a judgment against Calmes, in Civil Action No. 7296 of the docket of this Court, on July 25, 1958, for $21,529.08, plus interest and costs.

C. From August 22, 1958, through February 27, 1959, the United States assessed withholding and employment taxes for periods in 1958 and 1959 against Calmes in the amount of $5,228.39. As of the date of recording of the tax liens, the total balance due on these was $4,605.15 plus lien fees in the amount of $17.00.

D. The United States filed notice of its liens in the Office of the Recorder of Mortgages of Orleans Parish on the dates indicated in the table set out in Footnote 1.

E. On February 15, 1960, Calmes executed a notarized document in which it said that it "does hereby pledge and assign" to Albert A. Villegas ("Villegas") its claim against Louisiana in order to secure the payment to Villegas of an indebtedness of $46,938.19 for advances made during the period September 8, 1958, through February 2, 1959. This document was executed prior to the filing of notice of the Government's assessment of February 27, 1959, in the amount of $200.42. Thus, at the time the document was executed, notice had been filed on assessments in the amount of $20,977.79.

F. The United States served a notice of its lien on the trustee on January 29, 1964.

G. The Government's claim for taxes was reduced to a judgment on March 19, 1964, in Civil Action No. 14246, for the principal amount of $21,178.21, plus interest, statutory additions and costs of court.

H. Northern issued execution against the trustee on its judgment on January 7, 1966.

I. The Government issued execution against the trustee on its judgment on January 28, 1966.

J. Mr. Wegmann intervened for attorney's fees on November 1, 1967.

5. The sum of $5,000.00 would be reasonable compensation for Mr. Wegmann's extensive services.

### CONCLUSIONS OF LAW

1. Edward F. Wegmann is entitled to a payment of $5,000.00 out of funds held in the registry of the Court.

26 U.S.C.A. § 6321 creates a lien for unpaid taxes, "including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto * * * in favor of the United States upon all property * * * belonging to [the tax debtor]." However, 26 U.S.C.A. § 6323(b) (8) provides that the lien obtained by the Government under Section 6321 is not valid "[w]ith respect to a judgment or other amount in settlement of a claim * * * as against an attorney who, under local law, holds a lien upon * * * such judgment or amount, to the extent of his reasonable compensation for obtaining such judgment or procuring such settlement * * *." [2] The amendment applies in this case despite the exceptions set forth in Section 114 of Public Law 89–719. The judgment in favor of the Government in Civil Action No. 14246 was not one in which a lien was enforced but was merely a money action to reduce the Government's claim to judgment. Thus, Section 114(b) (1) is inapplicable.[3]

2. The provision granting a lien for attorney's fees was one of the provisions added by the Federal Tax Lien Act of 1966, Public Law 89–719. Section 114 of Public Law 89–719 provides that the amendments are applicable from the date of enactment (November 2, 1966) unless otherwise provided. See generally Historical Note, 26 U.S.C.A. § 6323, p. 71.

The relevant exceptions are set out in Section 114(b).

3. Nor, in light of the size of the fund available to the claimants and of the conclusions that the Court has reached as to priority of claims, will use of the amended provision impair a priority of any person (other than the United

Louisiana recognizes that a lawyer whose efforts have created a fund in which others than his client may share is entitled to be paid a reasonable fee out of the fund thus created. In Re Interstate Trust & Banking Company, 1958, 235 La. 825, 106 So.2d 276, 279 (On rehearing); Louisiana State Mineral Board v. Abadie, La.App., 1 Cir., 1964, 164 So.2d 159, 166. While these cases do not discuss whether or not the lawyer's claim is privileged, the provisions of LSA–R.S. 9:5001 granting "A special privilege * * * to attorneys at law for the amount of their professional fees on all judgments obtained by them, and on the property recovered thereby * * *." appear to encompass this type of claim. The Court has concluded that $5,000.00 is reasonable compensation for Mr. Wegmann's services in obtaining the fund about which all the parties are now contending. The tax lien asserted by the Government is thus subordinate to the claim of Mr. Wegmann to the extent of $5,000.00.[4]

2. There was no necessity that the United States secure a judgment against the trustee in order to obtain a valid lien under 26 U.S.C.A. § 6321 et seq. for penalties assessed.

While Northern has argued that the penalties assessed did not become an enforceable lien until judgment was secured by the United States, I cannot accept this construction of the statute. Section 6321 expressly provides that the lien of the United States includes any assessable penalty, and Sections 6322 and 6323 make it clear that this lien becomes valid against third parties either at the time of the assessment or—as to a purchaser, mortgagee, pledgee, or judgment creditor[5]—at the time the notice of assessment is properly filed. The statute does not require a judgment to be obtained before a penalty assessment becomes a valid lien.

My conclusion is buttressed by the fact that it has been generally assumed by the courts that a penalty assessment is a valid lien without regard to whether a judgment is obtained. For instance, in United States v. Phillips, 5 Cir., 1959, 267 F.2d 374, even though the Fifth Circuit held that Section 57, sub. j, of the Bankruptcy Act prohibits the enforcement of penalty assessments where the Government shows no pecuniary loss, the opinion proceeds on the assumption that the Government would have an enforceable lien but for its failure to show pecuniary loss. To the same effect is In Re Lykens Hosiery Mills, S.D.N.Y., 1956, 141 F.Supp. 895. See also In Re Parchem, D.C.Minn., 1958, 166 F.Supp. 724; In Re Hankey Baking Company, W.D.Pa., 1954, 125 F.Supp. 673; and In Re Burch, D.C.Kan., 1948, 89 F.Supp. 249. Compare Grimland v. United States, 10 Cir., 1953, 206 F.2d 599, in which the court reached a result contrary to *Phillips* as far as Section 57, sub. j, is concerned. The same assumption that

---

States) holding a lien or interest prior to the date of the enactment of the Act. Section 114(b) (2) (A). Likewise, applying the amended section here will not "operate to increase the liability of any * * * person." Section 114(b) (2) (B), or "shorten the time for bringing suit with respect to transactions occurring before the date of enactment of this Act." Section 114(b) (2) (C).

4. For a discussion of some of the problems presented by claims for attorney's fees under pre-1966 law, see Plumb, Federal Tax Collection and Lien Problems, 13 Tax L.Rev. 247, 459, 511–512 (1958). See also, e. g., United States v. Hubbell, 5 Cir., 1963, 323 F.2d 197, 201;

United States v. Kamieniecki, D.C.N.H., 1966, 261 F.Supp. 683, 690–691; Filipowicz v. Rothensies, E.D.Pa., 1942, 43 F.Supp. 619, 624.

5. The 1966 amendment substituted "holder of a security interest, mechanic's lienor, or judgment lien creditor" for mortgagee, pledgee, and judgment creditor. Historical Note, 26 U.S.C.A. § 6323, p. 70. Because of the possibility that utilization of the amended language might "impair propriety enjoyed by [a] person * * * holding a lien or interest prior to the date of enactment of [the] Act," the Court is basing its conclusions on the pre-1966 language. Compare note 3 supra.

a valid lien for penalty assessment arises without the necessity of a judgment is also made in other contexts. See, e. g., Miller v. Bank of America, 9 Cir., 1948, 166 F.2d 415.

Counsel has not cited one case in which a court has even hinted that a penalty assessment does not become a valid lien under Section 6321 et seq. unless the United States has obtained judgment. I therefore conclude that there was no necessity that the United States obtain a judgment in order to have a valid lien for the penalties assessed.

■ 3. The lien of the United States is valid against Villegas and Northern, and must be satisfied prior to their claims, to the extent of $20,977.79, plus statutory interest on that amount and lien fees of $17.00.

■ 26 U.S.C.A. § 6323 provides, in part, that a lien acquired by the Government under § 6321 is not valid against any pledgee or a judgment creditor [6] until appropriate notice has been filed. As to liens in the amount of $20,977.79, appropriate notice was filed before Villegas became a pledgee and before Northern secured execution on its judgment. Although Northern contends that "judgment creditor" does not mean a judgment *lien* creditor, the generally accepted view is to the contrary. The Fifth Circuit has said, "We believe that 'judgment creditor' * * * means a judgment lien creditor." Fore v. United States, 1964, 339 F.2d 70. Accord, Miller v. Bank of America, 9 Cir., 1948, 166 F.2d 415.

■ Northern acquired no privilege or lien under Louisiana law until it obtained execution on its judgment. See LSA–C.C.P. Arts. 2291 and 2292. Justice Provosty observed in Swift & Co. v. Leon Cahn & Co., 1922, 151 La. 837, 92 So. 355, 358:

"The bare fact of [a party's] having attached and of the attachment hav-

ing been maintained entitles him to a privilege * * *; and, outside of that bare fact, *10,000 decrees rendered in* [an] attachment suit, or in *any* other *suits to which the competing creditors had not been parties, would be as nothing for entitling him to a privilege.*" (Emphasis Supplied.)

Thus, the United States obtained a valid lien in the amount of $20,977.79 before any privilege or lien was obtained by Villegas or Northern. It therefore is entitled to satisfy its claim to the extent of $20,977.79, plus statutory interest on that amount and lien fees, prior to Villegas or Northern under the doctrine of "the first in time is the first in right." United States v. City of New Britain, 1954, 347 U.S. 81, 85, 74 S.Ct. 367, 370, 98 L.Ed. 520.

4. The relative rank of the claims of Villegas and Northern appears to be moot because the funds on hand are exhausted by the prior claims.[7]

A decree will therefore be entered providing for distribution of the funds in the registry of the Court in the following order: (1) $5,000.00 to Mr. Wegmann; and (2) the balance to the United States of America. This is to repay the sum of $20,977.79 in principal plus lien fees of $17.00, with the remainder applied to interest due the United States.

The question whether interest on the amount due for taxes is secured by a lien only until the date the funds were collected from Louisiana or continues until the date the United States is paid has not escaped notice. Some authorities hold that, as a general rule, after property of an insolvent passes into the hands of a receiver or an assignee in insolvency, interest is not allowed on the claims against the funds. E. g., Thomas v. Western Car Co., 1893, 149 U.S. 95, 13 S.Ct. 824, 37 L.Ed. 663; Vanston Bondholders Protective Committee v. Green, 1946, 329 U.S. 156, 67 S.Ct. 237, 91 L.Ed. 162. "The delay in distribution is the

---

6. See note 5 supra.

7. It appears that as of January 8, 1966, the total of taxes, interest, and lien fees due the United States by Calmes was $30,760.09.

act of the law; it is a necessary incident to the settlement of the estate." Thomas v. Western Car Co., supra, 149 U.S. p. 117, 13 S.Ct. p. 833. Interest on taxes due by a bankrupt ceases on the date of bankruptcy, City of New York v. Saper, 1949, 336 U.S. 328, 69 S.Ct. 554, 93 L.Ed. 710, whether or not the tax debt is secured by a lien. In Re Industrial Machine & Supply Co., W.D.Pa., 1953, 112 F.Supp. 261.

It can be urged that application of these principles would cause interest on the taxes to cease when the payment was collected from Louisiana, although there is some authority to the contrary. See Pearsall v. Central Oil & Gas Co. of America, W.D.Pa., 1927, 23 F.2d 716. However, the question of whether interest would accrue after the date on which funds were received from Louisiana's trustee is moot, because all the funds will be exhausted by the payment to Mr. Wegmann and the payment of the principal due the United States, together with interest to the date the funds were received from Louisiana's trustee.[8] In any event it would not appear that interest against Calmes would cease before that time either because of Louisiana's bankruptcy or because of the time required to effect collection from Louisiana.