PHELPS, RECEIVER IN BANKRUPTCY *v.*
UNITED STATES

No. 74–121.   Argued April 16, 1975—Decided May 19, 1975

Brennan, J., delivered the opinion for a unanimous Court.

*Dennis E. Quaid* argued the cause for petitioner.   With him on the briefs were *Kevin J. Gillogly* and *Daniel C. Ahern.*

*Keith A. Jones* argued the cause for the United States. With him on the brief were *Solicitor General Bork, As-*

*sistant Attorney General Crampton,* and *Crombie J. D. Garrett.*

MR. JUSTICE BRENNAN delivered the opinion of the Court.

Between March and June 1971 the Internal Revenue Service (IRS) made assessments of federal taxes in the amount of $140,831.59 against Chicagoland Ideel Cleaners, Inc. Chicagoland failed to pay the taxes after formal demand. Instead, on June 28, 1971, Chicagoland transferred its assets to an assignee for the benefit of creditors. The assignee promptly converted the assets into cash of approximately $38,000. On August 25, 1971, the IRS filed a notice of tax lien respecting the March-June assessments in the office of the Recorder of Deeds of Cook County, Ill., and on the same day served a notice of levy on the assignee. The notice of levy stated that the proceeds in the assignee's hands "are hereby levied upon and seized for satisfaction" of the taxes, "and demand is hereby made upon you for the [proceeds]." On September 14, 1971, an involuntary petition in bankruptcy was filed against Chicagoland. Chicagoland was adjudicated bankrupt and petitioner Phelps was appointed receiver in bankruptcy.

Petitioner receiver, on October 19, 1971, filed an application with the Referee in Bankruptcy for an order requiring the assignee, who had not complied with the IRS demand for payment, to turn over to petitioner the $38,000 proceeds from the sale of Chicagoland's assets. The IRS opposed the application on the ground that "[t]his court of bankruptcy lacks jurisdiction over the subject matter of the application because the United States is entitled to the possession of the moneys now held by [the] assignee of the bankrupt. . . ." The Referee in Bankruptcy rejected the contention, holding that "the

assignment . . . passed inalienable title to the assets of Chicagoland . . . to the assignee" and therefore "the notice of levy of the Internal Revenue Service is a nullity . . . ." The Referee accordingly entered an order directing the assignee to "surrender and turn over to" petitioner "all sums in his possession . . . ." The District Court for the Northern District of Illinois, on petition for review on behalf of the IRS, approved the Referee's turnover order. The Court of Appeals for the Seventh Circuit reversed. 495 F. 2d 1283 (1974). The Court of Appeals held: "Since possession of the property resided in the United States as against the [petitioner] receiver, the bankruptcy court lacked jurisdiction summarily to adjudicate the controversy without the Government's consent. . . . The United States is now entitled to have its claim adjudicated in a plenary suit. We respectfully decline to follow the contrary holding [of the Court of Appeals for the Ninth Circuit] in In re United General Wood Products Corp., 483 F. 2d 975 (9th Cir. 1973)." 495 F. 2d, at 1285–1286. We granted certiorari to resolve the conflict between the Courts of Appeals, 419 U. S. 1068 (1974).[1] We agree with the holding of the

---

[1] The grant was limited to the following questions presented in the petition:

"1. 'Whether the Court of Appeals incorrectly granted to the United States a priority based upon the Internal Revenue Code of 1954 for taxes in violation of and contrary to the priorities for payment of claims established by the Bankruptcy Act?'

"2. 'Whether the Court of Appeals incorrectly held that service of a Notice of Levy upon an assignee for the benefit of creditors subsequent to the assignment reduced the bankrupt's property then held by the assignee to the constructive possession of the United States?'

"3. 'Whether the Court of Appeals incorrectly determined that the Bankruptcy Court lacked summary jurisdiction to adjudicate the controversy before it without the consent of the United States?'"

Court of Appeals for the Seventh Circuit and affirm its judgment.[2]

## I

The assignee claims no interest in the proceeds of the $38,000. The Court of Appeals for the Ninth Circuit, in *In re United General Wood Products Corp.*, 483 F. 2d 975, 976 (1973), held that that circumstance, without more, subjected property to the bankruptcy court's summary jurisdiction to enter a turnover order. *Wood Products Corp.* relied on the statement in *Taubel-Scott-Kitzmiller Co.* v. *Fox*, 264 U. S. 426, 432–433 (1924), that constructive possession of the property by the bankruptcy court "exists . . . where the property is held by some other person who makes no claim to it." That reliance is misplaced. The statement read in the context of the facts of that case and its holding applied only to property in the hands of a nonadverse

---

[2] There is a significant difference in the result of a summary adjudication of the tax claim in the bankruptcy court and the result of its adjudication in a plenary suit:

"The difference between a summary and plenary proceeding in this context is not merely a matter of the relative formality of the respective procedures. The consequence of a summary turnover order is to subject the property in question to administration as part of the bankrupt estate. Where the government has a tax lien on the property, the consequence of the turnover is to subordinate that lien to the expenses of administration and priority wage claims. See Section 67c (3) of the Bankruptcy Act, 11 U. S. C. [§] 107 (c)(3). In contrast, if the property is not subject to summary turnover, it may be brought into the bankrupt estate only if the receiver is able to defeat the government's underlying tax claim in a plenary proceeding, *i. e.*, a suit for refund. Thus, in a case where the underlying tax claim is sound, for the government the difference between a summary and a plenary proceeding is the difference between holding the property subject to prior payment of administrative and priority wage claims and holding it outright." Brief for United States 19.

third person who was not holding it as agent for a bona fide adverse claimant. *Taubel* itself held that the bankruptcy court had not been given jurisdiction by summary proceedings to avoid a lien created by levy under a judgment of a state court where the sheriff possessed the property for the judgment creditor, and neither he nor the judgment creditor had consented to adjudication of the controversy by the bankruptcy court. Similarly, in this case the United States is a bona fide adverse claimant to the $38,000 proceeds held by the assignee and has not consented to adjudication of its claim by the bankruptcy court.

The levy of August 25, 1971, created a custodial relationship between the assignee and the United States and thereby reduced the $38,000 to the United States' constructive possession. Neither Chicagoland nor the petioner as receiver could assert a claim to the proceeds in that circumstance. For when Chicagoland failed to pay the taxes after assessment and demand, a lien in favor of the United States attached to "all property and rights to property, whether real or personal, belonging to [the taxpayer]." 26 U. S. C. § 6321. The assignee took Chicagoland's property subject to this lien.[3] The lien attached to the proceeds of the sale.[4] See *Sheppard* v. *Taylor,* 5 Pet. 675, 710 (1831); *Loeber* v. *Leininger,* 175 Ill. 484, 51 N. E. 703 (1898). "The lien reattaches to the thing and to whatever is substituted for it. . . . The owner and the lien holder, whose claims have been

___

[3] The unfiled tax lien was valid against all persons except purchasers, holders of security interests, mechanic's lienors, and judgment lien creditors. 26 U. S. C. § 6323 (a). Petitioner concedes that the assignee did not fall within any of these categories.

[4] The Government does not contend that the unfiled lien followed the property into the hands of good-faith purchasers from the assignee. Brief for United States 14 n. 5. As indicated in n. 3, *supra,* an unfiled tax lien is invalid against purchasers.

wrongfully displaced, may follow the proceeds wherever they can distinctly trace them." *Sheppard* v. *Taylor, supra,* at 710.[5]

The notice of levy and demand served on the assignee were an authorized means of collecting the taxes from the $38,000 held by him. Title 26 U. S. C. § 6331 (a) provides: "[I]f any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful for the Secretary . . . to collect such tax . . . by levy upon all property . . . on which there is a [tax] lien . . ."; "[t]he term 'levy' . . . includes the power of distraint and seizure by any means." § 6331 (b). Treasury Regulations, 26 CFR § 301.6331–1 (a) (1) (1974), provide that a "[l]evy may be made by serving a notice of levy," and that levy gave the United States the right to the proceeds. See *United States* v. *Pittman,* 449 F. 2d 623, 627 (CA7 1971). Title 26 U. S. C. § 6332 (a) requires that any person holding property levied upon must surrender it to the Government, or become liable for the tax, § 6332 (c). With surrender, however, any duty owed the taxpayer is extinguished. § 6332 (d).

Thus, following the levy of August 25, 1971, actual possession of the $38,000 was held by the assignee on behalf of the United States and "where possession is assertedly held not for the bankrupt, but for others prior to bankruptcy . . . the holder is not subject to summary

---

[5] *United States* v. *Bess,* 357 U. S. 51 (1958), is not to the contrary. *Bess* held that a tax lien effected during an insured's life against the cash surrender value of a life insurance policy attached after his death to insurance proceeds in the hands of the beneficiary but only in the amount of the cash surrender value. The limitation recognized that the taxpayer in his lifetime could not have realized a larger amount and thus there was no greater "property" or "rights to property" to which the lien could have attached *ab initio. Id.,* at 55–56.

jurisdiction." 2 J. Moore & R. Oglebay, Collier on Bankruptcy ¶ 23.06 [3], pp. 506.2–506.3 (14th ed. 1975); [6] *Cline* v. *Kaplan,* 323 U. S. 97 (1944); *Galbraith* v. *Vallely,* 256 U. S. 46 (1921). The receiver's recourse is limited to a plenary suit under § 23 of the Bankruptcy Act, 11 U. S. C. § 46. See *Taubel-Scott-Kitzmiller Co.* v. *Fox, supra.*

Petitioner argues, however, that actual possession is necessary to remove the Government's tax liens from the subordinate priority accorded them under § 67c (3) of the Bankruptcy Act.[7] The argument is without merit. *United States* v. *Eiland,* 223 F. 2d 118 (CA4 1955); *Rosenblum* v. *United States,* 300 F. 2d 843 (CA1 1962). Section 67c (3) has no bearing on the question of summary jurisdiction; it relates only to the priority that is accorded tax liens on property that has already been determined to be within the bankruptcy court's jurisdiction as part of the bankrupt estate. Here we are concerned not with priority of tax liens but with the effect of a tax

[6] The claimant may, however, consent to summary adjudication in the bankruptcy court. *Cline* v. *Kaplan,* 323 U. S. 97, 99 (1944). The United States refused consent in this case.

[7] Section 67c (3) of the Bankruptcy Act, 11 U. S. C. § 107 (c) (3), provides in pertinent part:

"Every tax lien on personal property not accompanied by possession shall be postponed in payment to the debts specified in clauses (1) and (2) of subdivision (a) of section 104 of this title . . . ."

Section 64. of the Bankruptcy Act, 11 U. S. C. § 104, provides in pertinent part:

"(a) The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment, shall be (1) the costs and expenses of administration . . . , (2) wages and commissions, not to exceed $600 to each claimant, which have been earned within three months before the date of the commencement of the proceeding, due to workmen, servants, clerks, or traveling, or city salesmen . . . ."

levy. Historically, service of notice has been sufficient to seize a debt, *Miller* v. *United States,* 11 Wall. 268, 297 (1871), and notice of levy and demand are equivalent to seizure. See, *e. g., Sims* v. *United States,* 359 U. S. 108 (1959). The levy, therefore, gave the United States full legal right to the $38,000 levied upon as against the claim of the petitioner receiver.

Petitioner's final contention is that the general restriction on a bankruptcy court's summary jurisdiction was altered by the enactment in 1938 of § 2a (21) of the Bankruptcy Act, 11 U. S. C. § 11 (a)(21), which grants bankruptcy courts jurisdiction to "[r]equire . . . assignees for the benefit of creditors . . . to deliver the property in their possession or under their control to the receiver . . . ." This provision, however, was designed to "clarif[y] the jurisdiction of the [bankruptcy] court," S. Rep. No. 1916, 75th Cong., 3d Sess., 12 (1938), and was "simply declaratory of prior case law," 1 Collier on Bankruptcy, *supra,* ¶ 2.78 [3], p. 390.26. Under that case law, an assignee for the benefit of creditors who holds assets as "a mere naked bailee for the creditors . . . has no right to retain the possession as against the trustee in bankruptcy." *In re McCrum,* 214 F. 207, 209 (CA2 1914). Here the assignee held as custodian for the United States, a bona fide adverse claimant. *Galbraith* v. *Vallely, supra.*[8]

*Affirmed.*

---

[8] Petitioner also relies on § 70a (8) of the Bankruptcy Act, 11 U. S. C. § 110 (a)(8). Section 70a (8) vests the trustee of the bankrupt's estate "with the title of the bankrupt as of the date of the filing of the petition . . . to . . . property held by an assignee for the benefit of creditors." Even petitioner argues, however, that Chicagoland on September 1, 1971, had no title to the property conveyed to the assignee. Brief for Petitioner 14. In any event, the pre-bankruptcy levy displaced any title of Chicagoland, and § 70a (8) is therefore inapplicable.