In re Resthaven Psychiatric Hospital, a California Corporation, Debtor.

**RESTHAVEN PSYCHIATRIC HOSPITAL, a California Corporation, Plaintiff-Appellee,**

v.

**UNITED STATES of America, Defendant-Appellant.**

**No. BK 76–7531 (DWW) (CA).**

United States District Court, C. D. California.

Feb. 9, 1977.

Shutan & Trost, Los Angeles, Cal., for debtor.

William D. Keller, U. S. Atty., Charles H. Magnuson, Asst. U. S. Atty., Chief, Tax Div., William J. James, Asst. U. S. Atty., Los Angeles, Cal., for U. S.

## MEMORANDUM and ORDER

DAVID W. WILLIAMS, District Judge.

Taxpayer-Bankrupt-Appellee Resthaven Psychiatric Hospital ("RPH") accumulated unpaid withholding taxes in 1975. Due to its failure to pay over such taxes to the Appellant United States, it was assessed in excess of $190,000, and ultimately the Internal Revenue Service ("IRS") levied on and seized the real property of RPH at 765 College Street in Los Angeles on April 16, 1976. On May 24, 1976, RPH was notified that the IRS would begin advertising the property for sale no later than June 11, 1976. RPH filed a petition in bankruptcy under Chapter XI on June 1, 1976. On June 30, 1976, RPH filed a complaint for declaratory relief to enjoin the IRS from advertising for sale or selling the property. The Bankruptcy Court granted a temporary restraining order and on July 28, 1976, a preliminary injunction restraining the IRS

from advertising for or proceeding in any way with the sale of any property of RPH. The United States moved to dismiss the complaint, and on September 15, 1976, the Bankruptcy Court denied such motion and, based on the evidence before it, rendered a declaratory judgment in favor of RPH. The matter is presently before the court on the consolidated appeals of the United States from the Bankruptcy Court orders of July 28, 1976 and September 15, 1976.

■ The United States advances two grounds for its appeal, the first of which can be handled in a rapid fashion. It contends that the Bankruptcy Court was prohibited from exercising summary jurisdiction over it in this matter by the doctrine of sovereign immunity. Since there is no provision in either § 314 of the Bankruptcy Act or Bankruptcy Rule 11–44 which makes specific reference to a waiver by the sovereign, the United States reasons that it cannot be bound by the Bankruptcy Court under the circumstances present here. However, the umbrella of *In Re Dolard*, 519 F.2d 282 (9th Cir., 1975) and *In Re Gwilliam*, 519 F.2d 407 (9th Cir., 1975), indicative of the proposition that little vitality remains in the doctrine of sovereign immunity in a bankruptcy context, seems to amply cover the legal and factual posture of this case, dispelling the correctness of the first argument of the government.

■ The second ground of attack is of much greater consequence. The government argues that if at the time of the filing of a petition in bankruptcy, property is in the actual or constructive possession of a claimant who is adverse to the bankruptcy petition and who is asserting a substantial claim, the Bankruptcy Court lacks jurisdiction to determine summarily the rights of such claimant to the property. Therefore, since the valid federal tax levy here reduced the property to the possession of the United States, the Bankruptcy Court lacked summary jurisdiction to adjudicate the United States' rights thereto.

Under the authority of *Phelps v. United States*, 421 U.S. 330, 95 S.Ct. 1728, 44 L.Ed.2d 201 (1975), and the persuasiveness

of *Cecelia Ruth Walsh, dba Beaver Builders* Bankruptcy Nos. A 76–52, 53, 54, 55, 56 (D.C.Alas., Oct. 26, 1976), the only subsequent United States District Court case that is on point, I find merit in the government's second argument. In *Phelps*, the Supreme Court held that a valid tax levy preceding a petition in bankruptcy divests the debtor of any rights which might have formed a basis for the exercise of jurisdiction by the Bankruptcy Court. The Court specifically stated: " . . . the pre-bankruptcy levy displaced any title of [the bankrupt] . . . " (421 U.S. at 337, n.8, 95 S.Ct. at 1733, n.8). Since possession of the property, and indeed substantial or colorable title to the property, resided in the United States, as is the situation here, the Court held that the Bankruptcy Court lacked jurisdiction summarily to adjudicate the controversy without the government's consent, and that the United States was entitled to have its claim adjudicated in a plenary suit.

In *Walsh*, under facts strikingly similar to those present here, the debtors argued, as does RPH, that the policies and statutes applicable to a Chapter XI case required a different result than in *Phelps*. Judge von der Heydt rejected such contention, as do I, with the following language:

"As recently as 1975 the Supreme Court held that a prebankruptcy levy by the IRS displaces the title of the debtor. *Phelps v. United States*, 421 U.S. 330, 337 n.8 [, 95 S.Ct. 1728, 44 L.Ed.2d 201] (1975). Although *Phelps* was a liquidating bankruptcy proceeding that difference is not significant. As stated in the previous quotation from *Collier on Bankruptcy*, § 311 only extends the scope of summary jurisdiction to certain property held by third parties. The holding in *Phelps* that a tax levy creates a substantial claim of title removes this case from that extended scope of jurisdiction." (P. 3.)

Although the 9th Circuit Court of Appeals rejected in *In Re Stockman Development Co.*, 447 F.2d 387, 391 (1971), the contention that a Chapter XI court's summary jurisdiction is based solely on possession, it explicitly acknowledged that its holding in *In Re Barasch*, 9 Cir., 439 F.2d 1393 (1971), affirmed as the rule of this circuit that the Bankruptcy Court does not acquire summary jurisdiction where the property is not in the debtor's possession and the debtor's title to it is disputed by a substantial adverse claim. See *Collier on Bankruptcy*, Vol. 8, § 913.02, pp. 162–63 (1976); *Remington on Bankruptcy*, Vol. 9, § 3573, pp. 214–18 (1955). That is the situation here as a federal tax levy creates a substantial claim of title. *Walsh*, at p. 2. Indeed, it may be credibly argued that the United States had more than a substantial claim to ownership here; it had a complete claim to ownership, because the unpaid withholding taxes are more than simply a debt of the employer to the government, they are funds held by the employer specifically in trust for the government.

█ RPH offers two alternate theories upon which the Bankruptcy Court has summary jurisdiction to restrain the United States from proceeding to advertise or sell RPH's real property. First, it points to decisions holding that a Chapter XI court has jurisdiction over equity in property which is in excess of the amount of a lien, *E. g., In Re Victor Builders, Inc.*, 418 F.2d 880 (9th Cir., 1969); *In Re Freed & Co.*, 534 F.2d 1235 (6th Cir., 1976). Since the amount of the United States' tax lien is approximately $191,000 and the construction costs of the subject property were in excess of $2 million, RPH argues that the Bankruptcy Court was vested with summary jurisdiction over the excess equity in its real property and was empowered to enter appropriate orders to protect such asset for the benefit of unsecured creditors.

Second, RPH refers to decisions holding that the Bankruptcy Court in a Chapter XI case has summary jurisdiction to prevent threatened action by an adverse party where the action threatened would render impossible the formulation, proposal and confirmation of a plan of arrangement. *E. g., In Re Tracy*, 194 F.Supp. 293 (N.D.Cal. 1961); *In Re Shokbeton Industries*, 449 F.2d 321 (5th Cir., 1971); *In Re Merritt Lumber*

*Co.*, 336 F.Supp. 325 (E.D.Pa.1971). RPH contends that its viability as an ongoing entity would have been seriously jeopardized and the possibility of its effectuating an arrangement with its creditors under Chapter XI would have been substantially impaired, if not completely precluded, if the proposed advertising of the property and sale had not been enjoined. Accordingly, the Bankruptcy Court was empowered to act as it did so that the primary purpose of the arrangement proceeding would not be completely frustrated.

After due consideration, I reject both theories offered by RPH. None of the cases cited by RPH in their support involved a federal tax levy. The federal tax levy is a unique procedure authorized and controlled by specific statutes, 26 U.S.C. § 6331, and case law, and references to cases which deal with other kinds of enforcement procedure are not controlling. It is important to note that 26 U.S.C. § 6342(b) governs a taxpayer's interest in surplus proceeds from the sale of seized property and provides an adequate vehicle at law to recover any such excess. Further, I am unconvinced that if the Bankruptcy Court did not act as it did, the primary purpose of the Chapter XI arrangement proceeding would have been completely frustrated. Quite the contrary, I view the Bankruptcy Court's action as a direct frustration of the purposes of the federal tax levy provisions.

In light of the above discussion, I conclude that the Bankruptcy Court's orders of July 28, 1976 and September 15, 1976 should be vacated on the ground that it lacks jurisdiction to determine summarily the rights of the United States to the property at issue. The United States is entitled to have its claim adjudicated in a plenary suit.

So Ordered.