**In the Matter of L. T. SOUDER, INC., Bankrupt.**

**Bankruptcy No. 78–232–A.**

United States Bankruptcy Court, E. D. Virginia, Alexandria Division.

April 2, 1981.

**220**

Robert O. Tyler, Alexandria, Va., Trustee in Bankruptcy.

H. Bradley Evans, Jr., Alexandria, Va., for trustee.

George P. Williams, Asst. U. S. Atty., Alexandria, Va., Will E. McLeod, Atty., Tax Div., U. S. Dept. of Justice, Washington, D. C., for government.

### MEMORANDUM OPINION

MARTIN V. B. BOSTETTER, Jr., Bankruptcy Judge.

L. T. Souder, Inc., the bankrupt, upon motion of the trustee, Robert O. Tyler, Esquire, requested that the Court enter an order assessing administrative expenses and costs of collection against certain property presently in the trustee's sole and exclusive possession, consisting of cash representing an account receivable subject to a lien in favor of the Internal Revenue Service ("IRS"). In said motion, the trustee also requested that he be granted leave to withdraw his Application for Reconsideration of this Court's Amended Order, entered on January 2, 1980, dissolving a Temporary Restraining Order against the IRS. This latter order had enjoined the IRS from further collection efforts in respect to the above described lien.

On August 2, 1978, Herman M. Braude, Esquire, was appointed by the Court to act as counsel for the bankruptcy estate for the purpose of collecting the bankrupt's receivables, most of which were from contracts with various agencies of the United States government. Among the accounts receivable of the bankrupt listed in Schedule B–2p was an account receivable due from Merando, Inc. in the amount of $93,755.79. This receivable, however, was allegedly offset by liabilities arising out of the bankrupt's default in completing its contract with Merando, Inc. to the District of Columbia government and Tristate Electrical Supply Company, among others. According to the trustee, any amount found due and owing the bankrupt after the satisfaction of the above-referenced liabilities was the subject of a lien asserted by the IRS against the property of the bankrupt, including the Merando, Inc. receivable for unpaid federal taxes.

As a result of the negotiations between Braude and the District of Columbia government, among others, the bankruptcy estate recovered a sum of $40,672.56. The trustee argues that this recovery was the sole and direct result of Braude's actions, and that a fair and reasonable compensation for the latter's services would be a twenty-five percent recovery fee, or $10,168.00, pursuant to 26 U.S.C. § 6323(b)(8) (the Federal Tax Lien Act of 1966).

A review of the bankrupt's petition, filed on April 28, 1978, reveals that the IRS executed a Notice of Levy in the amount of $96,402.56 which was served on Merando, Inc. on January 16, 1978. The petition also reveals that approximately six months prior to the filing of the petition the bankrupt assigned the accounts receivable due from Merando, Inc. to the IRS.

The IRS maintains that attorney's fees assessed pursuant to 26 U.S.C. § 6323(b)(8) are improper under *Phelps v. United States*, 421 U.S. 330, 95 S.Ct. 1728, 44 L.Ed.2d 201 (1975), and that since this matter is controlled by the Bankruptcy Act in effect prior to the present law this Court allegedly is without summary jurisdiction to determine the instant matter; that under *Phelps* the trustee is precluded from assessing administrative costs, including costs of creating an asset, under Section 67(c)(3) of the Bankruptcy Act, 11 U.S.C. § 107(c)(3); and, in the alternative, should summary jurisdiction be found, the trustee is precluded from assessing costs on equitable grounds.

Relying upon Section 6323(b)(8) of Title 26 of the United States Code, the trustee

asserts that the receivable collected by Mr. Braude should bear the attorney's fees attributable to that collection, notwithstanding the lien of the IRS. This section provides, in pertinent part:

"(b) Protection for certain interest even though notice filed.—Even though notice of a lien imposed by Section 6321 has been filed, such lien shall not be valid—

" . . . .

"(8) Attorneys' liens.—With respect to a judgment or other amount in settlement of a claim or of a cause of action, as against an attorney who, under local law, holds a lien upon or a contract enforcible against such judgment or amount, to the extent of his reasonable compensation for obtaining such judgment or procuring such settlement, except that this paragraph shall not apply to any judgment or amount in settlement of a claim or of a cause of action against the United States to the extent that the United States offsets such judgment or amount against any liability of the taxpayer to the United States." [1]

The trustee, in referring to the legislative history of 26 U.S.C. § 6323(b)(8), argues that the resolution of the instant matter requires a finding "that attorneys whose efforts result in obtaining or collecting judgments or settlements should be protected as to their reasonable fees to the extent that the fees are protected under local law." Senate Rep. No. 1708, 89th Cong., 2d Sess. (1966), *reprinted in* [1966] U.S.Code Cong. & Ad.News, p. 3722, 3727.

The IRS contends that the trustee in making reference to 26 U.S.C. § 6323(b)(8) has failed to take into consideration the import of the United States Supreme Court's decision in *Phelps v. United States, supra.*[2] The IRS maintains that as this Court is without summary jurisdiction over the assets levied upon, the entire fund presently in the possession of the trustee must be released to the United States. The IRS further asserts that the trustee's only remaining remedy is the institution of a plenary suit (i. e., a refund suit) wherein he must challenge the government's underlying tax claim. *Phelps, supra*, 421 U.S. at 333, n. 2, 95 S.Ct. at 1730 n. 2.

The Supreme Court in *Phelps, supra*, held that a valid pre-bankruptcy notice of levy and demand served upon an assignee for the benefit of creditors subjected the assets held by the assignee to the constructive possession of the United States. *Phelps,* therefore, stands for the proposition that upon valid service and demand, "a tax levy reposes *legal ownership* in the IRS of the property distrained." *Matter of Chantler Baking Company*, 436 F.Supp. 169, 173 (W.D.Pa.1977). *See e. g., American Acceptance Corp. v. Glendora Better Builders, Inc.*, 550 F.2d 1220 (9th Cir. 1977); *See also United States v. Weintraub*, 613 F.2d 612 (6th Cir. 1979).

It is well established that bankruptcy courts may exercise summary jurisdiction only over property, tangible and intangible,

1. An attorney's lien for services was upheld in proceedings for bankruptcy in federal courts in Virginia in *Bolling v. Bowen*, 118 F.2d 59 (4th Cir. 1941). The court in *Bolling*, at 62, held that an attorney has a lien for the value of his services upon funds collected for his client under Virginia common law. Virginia Code Section 54–70 (1974 Replacement) provides that an attorney may have a statutory lien upon a "cause of action as security for his fees for any services rendered in relation to the cause of action or claim."

2. In finding that the temporary restraining order against the United States should be dissolved, this Court, in an opinion letter to counsel, dated December 17, 1979, stated in part:

"I have reviewed the memorandum filed in the above matter to dissolve the temporary restraining order in this matter and I find no substantial evidence that would distinguish this matter from the case of *Phelps v. United States*, 421 U.S. 330 [95 S.Ct. 1728, 44 L.Ed.2d 201] (1975)."

This Court also determined therein that the trustee's contention that the IRS made no effort to collect the Merando account receivable was not sufficient to distinguish the instant matter from *Phelps. See United States v. Weintraub*, 613 F.2d 612, 621 (6th Cir. 1979), where the court found that under the Internal Revenue Code, 26 U.S.C. § 6332, there is "no limitation period on actions to enforce a notice of levy."

in the possession of the bankruptcy estate. If property is outside the court's jurisdiction at the time the petition is filed, a claimant has the right to have the merits of his claim determined in a plenary suit. *Cline v. Kaplan*, 323 U.S. 97, 65 S.Ct. 67, 89 L.Ed. 558 (1944). Thus, "[w]hen bankruptcy occurs after the levy and notice have been served upon a debtor of the bankrupt, the trustee in bankruptcy cannot interfere with the rights of the United States thereby perfected before bankruptcy." *United States v. Eiland*, 223 F.2d 118, 122 (4th Cir. 1955).

The IRS discounts the two cases cited by the trustee, *Columbia Casualty Company v. Consolidated Shipping Company*, 276 F.Supp. 600 (E.D.La.1967) and *Bolling v. Bowen, supra*, as inapplicable to the particular facts of the instant matter.[3] The IRS contends that as neither of these cases involve pre-bankruptcy levies, or assets outside the summary jurisdiction of the Court, they are without persuasive authority for consideration by the Court. In his "Motion Withdrawing Application for Reconsideration and for Order Assessing Administrative Expenses and Costs of Collection" the trustee seeks authorization to pay out of the Merando receivable, expenses and costs of collection, among other items. The IRS opposes the trustee's prayer for an order of payment on the grounds that Section 67(c)(3) of the Bankruptcy Act is not applicable to property that is not a part of the bankruptcy estate.[4] The Fourth Circuit in *United States v. Eiland, supra*, determined that where the United States serves notice of a tax lien on a taxpayer's debtor, before the taxpayer files a petition in bankruptcy, the interest of the United States was superior to any which could thereafter be acquired by a taxpayer's creditor and, thus, under Section 67(c) was superior to the trustee's interest.

█ The Supreme Court in *Goggin v. Division of Labor Law Enforcement of California*, 336 U.S. 118, 121, 69 S.Ct. 469, 470, 93 L.Ed. 543 (1949) determined that the term "possession," as used in Section 67(c), clearly spoke only as of the time the petition was filed. Merely because the trustee has possession of property does "not automatically convert the government's property to bankrupt property, thus making it part of the bankrupt's estate." *Matter of Chantler Baking Company, supra*, 436 F.Supp. at 174. It is also clear that the actual possession of property by the United States is not a necessary predicate to removing federal "tax liens from the subordinate priority accorded them under § 67c(3) . . . ." *Phelps v. United States, supra*, 421 U.S. at 336. The Supreme Court in *Phelps*, stated:

> "Section 67c(3) has no bearing on the question of summary jurisdiction; it relates only to the priority that is accorded tax liens on property that has already been determined to be within the bankruptcy court's jurisdiction as part of the bankrupt estate. Here, we are concerned not with priority of tax liens but with the effect of a tax levy."

*Id.* at 336–7, 95 S.Ct. at 1732–33.

The Court finds that the IRS duly served a Notice of Levy on Merando, Inc. (thus vesting the Merando, Inc. account receivable—and any proceeds derived therefrom—in the hands of the IRS) fully three months before the bankrupt filed its petition in bankruptcy. The Court finds further that

3. In *Columbia Gas Company, supra*, the court determined that the claim asserted by the creditor's attorney for services which culminated in the establishment of a fund had priority over the tax lien filed by the IRS against the creditor. The trustee had previously paid into the court the fund due the creditor in order to determine the priority of claims against the fund. *See also* note 1, *supra*.

4. Section 67(c)(3), 11 U.S.C. § 107(c)(3) provides that "[E]very tax lien on personal property not accompanied by possession shall be postponed in payment to the debts specified in clauses (1) and (2) of subdivision a of section 64 of this Act."

Section 64, 11 U.S.C. § 104(a) provides that "debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment shall be (1) the costs and expenses of administration . . . [and] (2) wages and commissions."

the IRS's reliance on *Phelps v. United States, supra,* is well founded and is clearly applicable under the circumstances of the present case.

Accordingly, the Court holds that the Merando, Inc. account receivable, which has been reduced to a sum certain in the amount of $40,672.56, must be turned over forthwith by the trustee to the possession of the United States. The Court holds further that, as the Court is without summary jurisdiction over the proceeds of the Merando, Inc. account receivable, it must decline to grant the trustee's request to enter an order directing the assessment of administrative costs including costs of collection and counsel fees against said proceeds.