CUDAHY, Circuit Judge.
The question on appeal is whether the bankruptcy court properly exercised its summary jurisdiction in ordering the Illinois Department of Agriculture (the “Department”) to turn over the proceeds realized from the Department’s sale of grain taken from the possession of John Gorenz, the bankrupt in this action. Because the record before us is insufficient to support the bankruptcy court’s summary adjudication of the Department’s claims, we reverse the district court’s affirmance of the bankruptcy court’s turnover order and remand for further proceedings.[1]
I.
The Illinois Department of Agriculture is charged by statute with responsibility for regulating grain dealers, Ill.Rev.Stat. ch. Ill, §§ 301-311 (1979), and grain warehouses, Ill.Rev.Stat. ch. 114, § 214.1 et seq. (1979). On January 12, 1978, the Department seized grain in the possession of John Gorenz, doing business as Gorenz Grain Company, who was, it appears, performing the functions of a grain dealer and/or a grain warehouseman.[2] Acting pursuant to *1181 Ill.Rev.Stat. ch. 127, § 40.23 (1979), the Department subsequently sold the grain and retained the proceeds of the sale (approximately $38,000). Section 40.23 empowers the Department:
To control surety bonds and trust funds and to establish trust accounts and bank accounts in adequately protected finan- . cial institutions, to hold monies received by the Director of Agriculture when acting as trustee, to protect the assets of licensees for the benefit of claimants, to collect and disburse the proceeds of such bonds and trust funds when acting as trustee on behalf of claimants without responsibility for the management and operation of discontinued or insolvent businesses, such funds or additions thereto in which the State of Illinois has no right, title or interest.
On January 23, 1978, Gorenz filed a voluntary petition in bankruptcy and was adjudicated a bankrupt. On March 8, 1978, Edward Limperis was appointed as trustee of the bankrupt’s estate, and, on March 12, 1979, Limperis filed a complaint in the bankruptcy court for an accounting and turnover of the grain proceeds held by the Department. The Department refused to consent to the bankruptcy court’s summary jurisdiction and filed a motion to dismiss the complaint.
The bankruptcy court denied the Department’s motion and held that the Department was required to surrender the proceeds of the grain sale to the trustee pursuant to Sections 2(a)(21) and 69(d) of the Bankruptcy Act[3] and Rule 604 of the Federal Rules of Bankruptcy Procedure.[4]
The Department appealed this turnover order to the district court, which affirmed the bankruptcy court on February 13, 1980.
II.
It is well established that the bankruptcy court may summarily adjudi *1182 cate claims pertaining to property in its actual or constructive possession. Katchen v. Landy, 382 U.S. 323, 327, 86 S.Ct. 467, 471,15 L.Ed.2d 391 (1966). If, however, the property is in the actual or constructive possession of a third person asserting a bona fide adverse claim,[5] the bankruptcy court cannot summarily determine the rights of that person in the property, unless by that person’s consent. 2 Collier on Bankruptcy, supra, 123.04 at 453-56.
But the mere assertion of an adverse claim does not oust a court of bankruptcy of its jurisdiction. It has both the power and the duty to examine a claim adverse to the bankrupt estate to the extent of ascertaining whether the claim is ingenuous and substantial. Once it is established that the claim is not colorable nor frivolous, the claimant has the right to have the merits of his claim passed on in a plenary suit and not summarily. Of such a claim the bankruptcy court cannot retain further jurisdiction unless the claimant consents to its adjudication in the bankruptcy court.
Cline v. Kaplan, 323 U.S. 97, 98-99, 65 S.Ct. 155, 156, 89 L.Ed. 97 (1944) (citations omitted).
The parties in the instant case agree that the bankruptcy court did not have actual or constructive possession of the grain proceeds. Therefore, the summary turnover order of the bankruptcy court can be sustained only if that court’s preliminary inquiry demonstrated that the Department’s claim to the proceeds “is so unsubstantial and obviously insufficient, either in fact or law, as to be plainly without color of merit, and a mere pretense.” Harrison v. Chamberlin, 271 U.S. 191, 195, 46 S.Ct. 467, 469, 70 L.Ed. 897 (1926).[6]
Here the bankruptcy court held, in its unpublished order dated July 30, 1979, that the Department did not have a substantial claim to the proceeds because its claim was
[derivative from the debtor’s estate. It is not an adverse claim of a lien or priority creditor whose possession at the time of filing the petition in bankruptcy could defeat summary jurisdiction of the bankruptcy court.
Since the State’s role here is that of a custodian, agent or assignee, standing in the shoes of the debtor, its claim here is not adverse (to the estate) so as to defeat summary jurisdiction of the bankruptcy court. Such claim is not real or substantial but merely colarable [sic]. Beneficial Finance Co. v. Ray, (5th Cir. 1954) 328 F.2d 55.
In affirming the bankruptcy court, the district court, in its unpublished order dated February 13,1980, accepted the bankruptcy court’s characterization of the facts and determined that the Department’s claim to the proceeds rose no higher than that of the farmers for whose benefit the grain was seized:
While it is true that the farmers . .. may have a bona fide legal claim to the $38,-000, they had not taken any steps to perfect that claim prior to the date on *1183 which the bankruptcy petition was filed. Hence ... at the relevant time they were in neither actual nor constructive possession of the assets in issue. This means that the farmers, at the time of filing, were not adverse claimants and the state, which was holding for their benefit, cannot be deemed a “custodian for ... adverse claimant[s].” [citing Phelps v. United States, 421 U.S. 330, 337, 95 S.Ct. 1728, 1732, 44 L.Ed.2d 201 (1975).][7]
But the holdings of both the bankruptcy court and the district court rest on the premise that the farmers had sold their grain to Gorenz and were, therefore, unsecured creditors of the bankrupt for the purchase price. In these circumstances, the Department was viewed as a “mere naked bailee [for a group of creditors],” Phelps v. United States, 421 U.S. 330, 337, 95 S.Ct. 1728, 1732, 44 L.Ed.2d 201 (1975), having no substantial claim to the grain (or to the proceeds of its sale by the Department) adverse to the bankrupt.
The Department argues, however, that the summary record does not show that the farmers had sold their grain to Gorenz. Rather, the Department maintains, Gorenz appears to have been serving as a grain warehouseman (albeit without a license). If so, the farmers would presumably have retained ownership of their grain, and Gorenz would have been a mere bailee for them. Since, in these circumstances, Gorenz would have had no ownership interest in the grain, the trustee in bankruptcy could acquire no such interest, see Cattle Owners Corp. v. Arkin, 252 F.Supp. 34 (S.D. Iowa 1966), and the Department, as trustee on behalf of the farmers who retained ownership of the grain,[8] would have a claim to *1184 the grain sale proceeds of sufficient merit to avoid the bankruptcy court’s summary jurisdiction.
The trustee maintains that the Department’s argument is without merit because it is not supported by any evidence in the record.[9] The trustee fails to recognize, however, that “the burden of proof in a turnover'proceeding is at all times on the receiver or trustee; he must at least establish a prima facie case. After that, the burden of explaining or going forward shifts to the other party, but the ultimate burden or risk of persuasion is upon the receiver or trustee.” 2 Collier on Bankruptcy, supra, 123.10 at 566. See also Maggio v. Zeitz, 333 U.S. 56, 68 S.Ct. 401, 92 L.Ed. 476 (1948).
As part of his prima facie case, the trustee must demonstrate through clear and convincing evidence that the property or proceeds in question are a part of the bankrupt’s estate. Maggio v. Zeitz, supra, 333 U.S. at 64, 68 S.Ct. at 405; Fox Jewel Co. v. Lee, 264 F.2d 720 (5th Cir.), cert. denied, 361 U.S. 815 (1959).[10] The quantum of evidence necessary to satisfy the trustee’s burden of persuasion will necessarily vary according to the circumstances of individual cases. In the instant case, however, we believe the trustee did not introduce sufficient evidence to establish that Gorenz had title to the grain seized by the Department. The only evidence in the record before us concerning ownership of the grain consists of two pages of an apparently unsigned “Statement of Affairs for Bankrupt Engaged in Business,” attached as an “exhibit” to the brief filed by the trustee in the district court. The second of these pages, entitled “Schedule B-2. — Personal Property,” lists 105,000 bushels of corn (valued at $189,000) and 5,000 bushels of soy beans (valued at $25,000) as “inventory.”
Perhaps an affidavit from Gorenz stating that he had purchased the seized grain from the farmers would have been sufficient to meet the trustee’s burden of persuasion. But we do not know who prepared the statement before us and we therefore cannot determine whether it was prepared by someone with personal knowledge or otherwise competent to attest to the ownership of the grain. Moreover, it is entirely possible that the grain seized by the Department was not included as part of the grain reported as inventory in the statement. Thus, we believe that this single document does not meet the bankruptcy trustee’s obligation of proving by clear and convincing evidence that the grain seized by the De *1185 partment belonged to Gorenz.[11] Summary jurisdiction cannot be made to rest solely upon such flimsy documentation.
But, on the other hand, once the bankruptcy trustee has established a prima facie case by somewhat weightier indicia than appear here, the burden of producing contrary evidence shifts to the party in possession of the disputed property. Thus, in this case, if the trustee had offered clear and convincing evidence that the grain was really part of Gorenz’ estate — that Gorenz bought it and did not merely store it — the Department could not resist the summary jurisdiction of the bankruptcy court simply by alleging that the grain was not owned by Gorenz. Rather, the Department would have to produce evidence sufficient to create a more than merely colorable question of fact regarding ownership of the grain.[12] Since, however, the evidence before us is insufficient to support the bankruptcy trustee’s burden of establishing a prima facie case, the summary adjudication of the bankruptcy court cannot be sustained.[13]
III.
The judgment of the district court affirming the bankruptcy court’s summary turnover order is therefore reversed and the cause remanded for further proceedings consistent with this opinion.[14]

. Because these proceedings were commenced prior to October 1, 1979, the Bankruptcy Act of 1898, as amended, 11 U.S.C. § 1 et seq., (1976), is applicable here. Bankruptcy Act of 1978, Pub.L. 95-598, Title IV, §§ 402, 403 (1978) (set forth in the introduction to 11 U.S.C.A. (1979)).

. The only indication in the summary record before us as to why the Department took possession of the grain held by Gorenz is found in the Department’s memorandum in support of its motion to dismiss, filed in the bankruptcy court on May 15, 1980. The memorandum reads, in part:
John A. Gorenz, the bankrupt herein, did business as the Gorenz Grain Company. His business in part consisted of ‘storing grain for compensation’ as that expression is defined in the Public Grain Warehouse and Warehouse Receipts Act (Warehouse Act), Ill.Rev.Stat. (1977) ch. 114, pars. 214.1 et seq. At no time however was Gorenz licensed pursuant to the Warehouse Act to store grain and was therefore operating in contravention of it. Gorenz’s only license entitled him to ‘deal in grain’ pursuant to Ill.Rev.Stats. (1977) ch. Ill, pars. 301 et seq. The requirements for a grain dealer’s license are considerably less stringent than a warehousing *1181 license. However, a grain dealer must post a bond in the statutorily prescribed amount. Gorenz did not maintain his bond. Therefore, on January 21, 1978, the Illinois Department of Agriculture pursuant to Ill.Rev.Stats. (1977) ch. 127, par. 40.5 (Possession Statute) and the regulations formulated thereunder took possession of the grain illegally stored by Gorenz.

. Section 2(a)(21) sets forth as one of the enumerated powers of bankruptcy courts, the power to:
Require receivers or trustees appointed in proceedings not under this title, assignees for the benefit of creditors, and agents authorized to take possession of or to liquidate a person’s property to deliver the property in their possession or under their control to the receiver or trustee appointed under this title or, where an arrangement or a plan under this title has been confirmed and such property has not prior thereto been delivered to a receiver or trustee appointed under this title, to deliver such property to the debtor or other person entitled to such property according to the provisions of the arrangement or plan, and in all such cases to account to the court for the disposition by them of the property of such bankrupt or debtor ....
11 U.S.C. § ll(a)(21) (1976).
Section 69(d), which relates to disbursements of a bankrupt’s property by trustees or receivers not appointed under the Bankruptcy Act, provides:
Upon the filing of a petition under this title, a receiver or trustee, appointed in proceedings not under this title, of any of the property of a bankrupt ... shall be accountable to the bankruptcy court, in which the proceeding under this title is pending, for any action taken by him subsequent to the filing of such bankruptcy petition, and shall file in such bankruptcy court a sworn schedule setting forth a summary of the property in his charge and of the liabilities of the estate, both as of the time of and since becoming a receiver, trustee, assignee, or agent, and a sworn statement of his administration of the estate. Such receiver, trustee, assignee, or agent, with knowledge of the filing of such bankruptcy proceeding, shall not make any disbursements or take any action in the administration of such property without first obtaining authorization therefor from the bankruptcy court.
11 U.S.C. § 109(d) (1976).

. Rule 604 provides, in part:
(a) Accounting Required. Any receiver or trustee appointed in proceedings not under the Act, assignee for the benefit of creditors, or agent, required by the Act to deliver property, in his possession or control to the trustee or receiver in bankruptcy, shall promptly file a written report and account with the bankruptcy court with respect to the property of the estate and his administration thereof.

. “Bona fide adverse claim” is a term of art in bankruptcy law that is not susceptible of easy definition. See 2 Collier on Bankruptcy H 23.06 at 501 (14th ed. 1976) (“it is impossible to declare a general rule that will determine in every case whether a person proceeded against is or is not an adverse claimant”). Mere possession of the property or proceeds is generally insufficient to create a claim “adverse” to the bankrupt’s estate. Rather, possession must be accompanied by some form of legal or equitable ownership interest in the property. Id. This interest may be asserted by the party in possession either on his own behalf or on behalf of another for whom he holds the property as trustee, custodian, agent or bailee. See Phelps v. United States, 421 U.S. 330, 335-36, 95 S.Ct. 1728, 1731-32, 44 L.Ed.2d 201 (1975) (“where possession is assertedly held not for the bankrupt, but for others prior to bankruptcy ... the holder is not subject to summary jurisdiction") (citations omitted).

. As Judge Charles Clark put it in Matter of Meiselman, 105 F.2d 995, 997 (2d Cir. 1939):
[I]f there is a real and substantial controversy of law or fact as to property held adversely to a bankrupt — ‘a contested matter of right, involving some fair doubt and reasonable room for controversy’ — the bankruptcy court is ‘without jurisdiction’ to adjudicate the matter, but the trustee must have resort to a plenary suit.

. The district court also found that the Department’s assertion of its authority under § 40.23 did not divest the bankruptcy court of summary jurisdiction since that provision, as applied here, is “a means for the distribution of certain assets belonging to an ‘insolvent or discontinued business’ outside of the federal bankruptcy system.”
We agree with the district court that any attempt to distribute assets of an insolvent grain dealer to farmer-creditors under § 40.23 would be superceded by federal bankruptcy proceedings. See 11 U.S.C. § ll(a)(21), supra note 3; Emil v. Hanley, 318 U.S. 515, 63 S.Ct. 687, 87 L.Ed. 954 (1943); Taylor v. Sternberg, 293 U.S. 470, 55 S.Ct. 260, 79 L.Ed. 599 (1935).
The Department also argues that the farmers were not merely creditors of the bankrupt because the seizure of the grain under § 40.23 operated to impress the grain with a trust in favor of the farmers. Any trust interest created in this manner would arise only upon the Department’s seizure of the assets of the discontinued or insolvent dealer and would attach to the dealer’s general assets. See 111. Dept, of Agriculture, Rules and Regulations Relating to Civil Administrative Code, Art. Ill, Reg. I, Rule 3.1.1 (1977) (hereinafter 111. Dept, of Agriculture Regulations) (“When a licensed business fails, the director of the Illinois Department of Agriculture as Trustee shall take possession of the licensee’s current and other assets. In the case of warehouse or grain dealers, this includes grain.”)
As such, any interest created by § 40.23 is no more than an attempt by the legislature to give the farmer-beneficiaries a priority over general creditors, and this priority would be ineffective against the trustee. See Elliott v. Bumb, 356 F.2d 749 (9th Cir.), cert. denied, 385 U.S. 829, 87 S.Ct. 67, 17 L.Ed.2d 66 (1966) (rejecting state’s attempt to impose a “trust” on funds whose ownership had vested previously in the bankrupt). See also § 67(c)(1)(A) of the Bankruptcy Act of 1898, as amended, 11 U.S.C. § 107(c)(1)(A) (1976) (invalidating, as against the bankruptcy trustee, “every statutory lien which first becomes effective upon the insolvency of the debtor, or upon distribution or liquidation of his property, . . . ”). Cf. Selby v. Ford Motor Co., 590 F.2d 642 (6th Cir. 1979) (building contract funds held by bankrupt contractor and impressed with statutorily-imposed trust in favor of his subcontractors not part of bankrupt contractor’s estate since contractor never acquired beneficial ownership of the funds).

. The authority of the Department to serve as trustee with respect to grain seized from warehouses is not free from doubt, since § 40.23, on its face, empowers the Department, “when acting as trustee, to protect the assets of licensees [here Gorenz] for the benefit of claimants, ...” Ill.Rev.Stat. ch. 127, § 40.23 (1979). The regulations promulgated pursuant to § 40.23 also speak of claims filed "against the licensee’s assets.” See 111. Dept, of Agriculture Regulations, supra note 7, Art. Ill, Reg. I, Rules 3.1.1— 3.1.5. If the licensee is not a dealer but a warehouseman, the grain in his possession would presumably not be his but the farmers’ assets. Section 40.23 is not explicitly limited to regulation of dealers, however, and Rule 3.1.6 of the regulations provides:
If the business failure is a grain warehouseman or a grain dealer then all grain or re *1184 ceiptF from grain in possession or in transit shall be placed in trust by the Director of the Illinois Department of Agriculture to be used for the benefit of claimants. If the business is a grain warehouse then all grain in the business possession shall if the amount is equal to or more than the outstanding warehouse receipts be used to satisfy warehouse receipt claims. If the amount of grain is less than the amount necessary to satisfy all outstanding warehouse receipts the Director of the Illinois Department of Agriculture, as Trustee, shall convert, through sale, the grain to cash. The money received shall be placed in a trust account to be distributed to claimants on a pro-rata basis to warehouse receipt holders.

. The trustee also argues that the Department did not raise this issue previously. However, an examination of the briefs filed in the district court shows that this issue was presented to that court. And, although the issue was not clearly presented to the bankruptcy court, the Department did argue there that Gorenz did not have possession of the grain and that his earlier possession was unlawful since he was operating in contravention of the Illinois Warehouse Receipts Act. The Department’s memorandum in support of its notice to dismiss reads in part:
Gorenz stored the grain in question without proper license in contravention of the Warehouse Act. His possession was therefore illegal ab initio. Even this illegal possession terminated when the State pursuant to its Possession Statute took control of the grain two days prior to the filing of the petition in bankruptcy.
In any case, the Department’s refusal to consent to the bankruptcy court’s summary jurisdiction obligated the trustee to establish a prima facie case in support of his motion for a summary turnover order.

. Although not at issue in this case, the trustee, as part of his prima facie case, must also prove that the “person proceeded against has either possession or control of the property or proceeds demanded.” 2 Collier on Bankruptcy, supra, 1) 23.10 at 568-69.

. We also note that the bankruptcy and district courts made no findings regarding the sufficiency of this evidence since they assumed that the farmers were “mere creditors” of the bankrupt.

. Similarly, if a prima facie case is made out by the trustee, the mere allegation by the Department that Gorenz fraudulently obtained possession of the grain from the farmers would be insufficient to divest the bankruptcy court of jurisdiction.

. The allocation of burdens of persuasion and production set forth in this opinion is generally consistent with the standards applied in summary judgment proceedings under Rule 56 of the Federal Rules of Civil Procedure. We note that Rule 56 is fully applicable to adversary proceedings in bankruptcy by virtue of Rule 756 of the Federal Rules of Bankruptcy Procedure.

. Matters not discussed in this opinion have nevertheless been duly considered. We have found them to be insufficiently important or meritorious to warrant discussion.