**In re HTI SHIPPING, INC.,**

**and**

**Island Shipping Lines, Ltd., Debtors.**

**Bankruptcy No. 87–05100.**

United States Bankruptcy Court,
D. New Jersey.

Aug. 31, 1987.

Ravin, Sarashohn, Cook, Baumgarten, Fisch & Baime by Robert A. Baime and Sharon L. Levine, Roseland, N.J., Freehill, Hogan & Mahar, Sp. Maritime Counsel by Nathan Bayer and Alex Vitale, New York City, for debtors.

Hannock Weisman, by Jack Gillman, Roseland, N.J., for Authority of Guam.

U.S. Maritime Admin. by Richard Lorr, Washington, D.C.

OPINION

WILLIAM F. TUOHEY, Bankruptcy Judge.

On August 19, 1987, the debtors filed separate petitions for reorganization under Chapter 11 of the United States Bankruptcy Code. This Court, on the date of the filing, entered an order calling for the joint administration of the above two debtors' estates.

Island Shipping Lines Ltd. (ISL) is principally engaged in the shipping business on the island of Guam, and operates two American flag cargo ships commonly known as the "Island Mariana" and the "Island Hope" which ships carry cargo between the ports of Japan and Guam. ISL is the wholly owned subsidiary of HTI Shipping, Inc. (HTI), which entity owns the "Island Mariana" and the "Island Hope" and charters those two vessels to ISL.

On August 10, 1987, the Port Authority of Guam commenced an action in the United States District Court for the Territory of Guam to recover alleged unpaid balances for wharfage and stevedore services alleged to be owed by the M/V "Island Mariana" in the total sum of $559,540.26. In connection with said proceeding, the Port Authority of Guam requested that the vessel Mariana be arrested *in rem* by the United States Marshal for the District Court of Guam. Pursuant to the Port Authority's request, a warrant for arrest of the vessel *in rem* pursuant to Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims was issued by the District Court of Guam and the vessel was arrested by the marshal. To date said vessel remains under arrest at Guam pursuant to the aforesaid warrant.

On August 20, 1987, the debtors HTI and ISL filed an *ex parte* application in support of order to show cause before the United States Bankruptcy Court for the District of New Jersey seeking to compel the Port Authority of Guam to discharge and remove its arrest warrant on the aforesaid vessel known as M/V "Island Mariana." On August 20, 1987, Bankruptcy Judge Wizmur, sitting in Trenton for the United States Bankruptcy Court for the District of New Jersey, did enter an order to show cause compelling the Port Authority of Guam to show cause on September 1, 1987, before the Bankruptcy Court in the District of New Jersey as to why a permanent injunction should not be issued discharging and removing the warrant for arrest of the said vessel which is pending in the District Court for the Territory of Guam. Said order of August 20, 1987, provides in its initial paragraph that pending final hearing the arrest of the vessel is released. The parties unilaterally ultimately agreed to continue the arrest in place and have requested this Court on an expedited hearing held August 31, 1987, to reconsider said matter.

This Court on August 25, 1987, also heard the debtor's application seeking authorization to use certain cash collateral. Said hearing on the record was attended by the majority of the lien holders asserting claims against the debtor's assets. As a result of said hearing held August 25, 1987,

the debtor, on August 27, 1987, presented an order to the Court represented by the debtor to be a consent order which has been duly entered by the Court. In this Court's order of August 27, 1987, the debtor is authorized to use its cash collateral and to operate its shipping business pursuant to certain restrictions and qualifications as set forth in said order. The second paragraph of this Court's order of August 27, 1987 is relevant and reads in part:

ORDERED, that the Debtors be, and they hereby are, authorized to utilize ¹⁰/₁₆ths ($100,000) of the first $160,000 of the aforementioned Military Receivables and ⅔rds of the balance of such Military Receivables (which have been presented to the Banks but not yet collected by the Banks) for the purpose of arranging the prompt arrival and discharge of the ISLAND HOPE at Guam, release of the ISLAND MARIANA from seizure at Guam, loading of all available containers belonging to the Itel as hereinafter provided, expenses of a voyage of each of the aforesaid vessels to ports in Japan for discharge and redelivery to Itel of the aforesaid empty containers as hereinafter provided, loading of cargoes destined for the port of Guam, return voyage to Guam for discharge of the aforesaid cargoes and all expenses necessary and incidental to accomplish the aforesaid in the ordinary course of the Debtor's business and not for purpose prohibited by law;

The initial question for this Court to determine is wherein jurisdiction lies over the arrested vessel currently sitting in the harbor at Guam.

Under the old Bankruptcy Act, a Bankruptcy Court's summary jurisdiction over a debtor's property was limited to property in the debtor's possession on the date that the case was filed. *Phelps v. United States*, 421 U.S. 330, 95 S.Ct. 1728, 44 L.Ed.2d 201 (1975). The new Bankruptcy Code abolished the distinction between summary and plenary jurisdiction thus expanding the jurisdiction of Bankruptcy Courts beyond the possessory limitations previously imposed. H.R.Rep. No. 95–595, pp. 48–49 (1977), U.S.Code Cong. & Admin.

News 1978, pp. 5787, 6009–6011; *Northern Pipeline Construction v. Marathon Pipeline Company*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).

The scope and magnitude of this Court's jurisdiction concerning property formerly held by the debtor but removed from the control of the debtor in the days prior to the filing of a Chapter 11 proceeding was completely set forth in the case of *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). The Court in *Whiting, supra*, recognized that in a Chapter 11 reorganization proceeding such as is before this Court, the Bankruptcy Code envisions that a troubled enterprise, such as the debtors herein, may be restructured to enable them to operate successfully in the future. Until the business can be reorganized pursuant to the Code, the Trustee, or as in the matter before this Court, the debtor-in-possession, is authorized to manage the property of the estate and to continue the operation of the business. As was recognized in *Whiting*, 103 S.Ct. at page 2312:

By permitting reorganization, Congress anticipated that the business would continue to provide jobs, to satisfy creditors' claims, and to produce a return for its owners ... [citation omitted]. Congress presumed that the assets of the debtor would be more valuable if used in a rehabilitated business than if "sold for scrap." *Ibid.* The reorganization effort would have small chance of success, however, if property essential to running the business were excluded from the estate.

In *Whiting, supra*, the Supreme Court held that Bankruptcy Code Section 542(a) generally authorized the turnover of a debtor's property seized by a secured creditor prior to the commencement of the reorganization proceedings. The Court in *Whiting* specifically noted 103 S.Ct. at page 2313:

The statutory language reflects this view of the scope of the estate. As noted above, § 541(a)(1) provides that the "estate is comprised of all of the following property, wherever located: ... all legal or equitable interests of the debtor

in property as of the commencement of the case." 11 U.S.C. § 541(a)(1) (1976 ed. Supp. V). The House and Senate Reports on the Bankruptcy Code indicate that § 541(a)(1) is intended to include in the estate any property made available to the estate by other provisions of the Bankruptcy Code. See H.R.Rep. No. 95–595, p. 367 (1977). Several of these provisions bring into the estate property in which the debtor did not have a possessory interest at the time the bankruptcy proceedings commenced.

Section 542(a) is such a provision. It requires an entity (other than a custodian) holding any property of the debtor that the trustee can use under § 363 to turn that property over to the trustee. Given the broad scope of the reorganization estate, property of the debtor repossessed by a secured creditor falls within this rule, and therefore may be drawn into the estate. While there are explicit limitations on the reach of § 542(a), none requires that the debtor hold a possessory interest in the property at the commencement of the reorganization proceedings.

Keeping the above history in mind, this Court now faces the question as to whether it has jurisdiction to vacate the arrest of the vessel which occurred in the Territory of Guam. In the case of *United States of American v. LeBouf Bros. Towing Co., Inc.*, 45 B.R. 887 (E.D.La.1985), United States District Judge Sear held that the automatic stay of the Bankruptcy Code prevented a post petition execution sale on debtor's vessels which were being foreclosed in admiralty under a preferred ship mortgage. In particular, Judge Sear in *LeBouf, supra,* at page 891 held:

Furthermore, there would have been no jurisdictional conflict even if LeBouf had filed its petition for reorganization in another district. First, if I still had jurisdiction over LeBouf's boats after the bankruptcy action were filed, I would nevertheless be required to abide by the automatic stay effected by § 362 of the Bankruptcy Code. Second and more important, 28 U.S.C. § 1334 was amended by the 1984 Amendments so that the district court in the district in which a title 11 case is commenced has "exclusive jurisdiction of all of the property, wherever located, of the debtor...." 1984 Amendments, § 1–1(a) (to be codified 28 U.S.C. § 1334(d)). I would therefore have had no jurisdiction over the boats and thus, there could have been no conflict of jurisdiction. The United States has not demonstrated any cause for me to withdraw this court's reference of LeBouf's title 11 case to the bankruptcy court.

This Court currently sits as a unit of the United States District Court for the District of New Jersey. On July 23, 1984, the Honorable Clarkson S. Fisher, Chief Judge for the United States District Court for the District of New Jersey entered a standing order generally referring all cases under Title 11 of the United States Code and any or all proceedings arising under Title 11 of the United States Code to the judges of the United States Bankruptcy Court sitting within the district. Said action of the Chief Judge was taken pursuant to the Bankruptcy Amendments entered by Congress in 1984, particulary 28 U.S.C.A. § 151 and § 157. This Court specifically finds that the within matter is a "core" proceeding and that jurisdiction pursuant to the aforesaid Order of Reference from the District Court lies within this Court's jurisdiction pursuant to 28 U.S.C.A. § 157(b)(2)(E)(K) and (O).

Some of the early cases prior to enactment of the Bankruptcy Code distinguished the rights between an admiralty court and a court of bankruptcy on the basis as to whether the bankruptcy proceedings was a reorganization or a liquidation. Judge Sear in *LeBouf, supra,* correctly noted at page 890:

The plain language of the automatic stay provision of the Bankruptcy Code applies equally to liquidations and reorganizations.

The Court further notes that Judge Sear on page 890 of the *LeBouf* case quotes at length from the Senate Judiciary reports as well as the reports of the House Judiciary Committee. A reading of said reports

makes it clear that it was the intent of Congress when it passed the automatic stay provisions of the Code that they were encompassing a broad range of proceedings including arbitrations as well as administrative and judicial proceedings.

In the case of *Morgan Guaranty Trust Company of New York, et al., v. Hellanic Lines Ltd., et al.,* 38 B.R. 987 (S.D.N.Y. 1984), Judge Sweet in the District Court noted at page 999:

> Of course, the arrest by ITO of the freights is akin to the seizure by the IRS of personal property of Whiting pursuant to the levy and distraint provision of the Internal Revenue Code, 26 U.S.C. § 6321. The Supreme Court in *Whiting* balanced the interests of the IRS as a secured creditor and the congressional goal of encouraging reorganizations. Noting that Congress chose not to exclude property from the estate for the protection of secured creditors but rather to provide "adequate protection" for their interests. 11 U.S.C. Section 363(e), the court concluded that the secured creditor had to look to that provision for protection.

In summary, this Court finds that there is a pending reorganization and further finds that the majority of the secured creditors of the debtor's estate are willing to allow the debtor to make reasonable efforts to attempt to reorganize, and in said context the secured creditor body has agreed to the cash collateral order entered by this Court which will allow the debtor to continue limited operations. This finding compels a ruling that this Court through the District Court of New Jersey has jurisdiction over this matter. An order may be entered so confirming this Court's jurisdiction. The issue as to the voiding of the arrest of the vessel in Guam which has been obtained by the Port Authority of Guam must await a finding as to the issues of adequate protection based upon Bankruptcy Code Section 363.