**In re George BROWN, Jr., Debtor.**

**George BROWN, Jr., Debtor,**

**v.**

**The EVANSTON BANK and the Internal Revenue Service, Defendants.**

**Bankruptcy Nos. 88 B 10817, 88 A 845.**

United States Bankruptcy Court, N.D. Illinois, E.D.

Nov. 1, 1989.

Gregory K. Stern, Chicago, Ill., for debtor.

Barrack, Ferrazano, Kirschbaum & Perlman, Chicago, Ill., Benjamin R. Norris, Trial Atty., Tax Div., Washington, D.C., for defendants.

### MEMORANDUM OPINION

ERWIN I. KATZ, Bankruptcy Judge.

The debtor in this case, George Brown, Jr. ("Debtor"), commenced this adversary proceeding seeking a turnover of $18,429.78 held by the Evanston Bank ("Bank") and claimed by the Internal Revenue Ser-

vice ("IRS") pursuant to a Notice of Levy. A trial was held on August 14, 1989 and both parties have submitted post-trial briefs. This Memorandum Opinion will constitute Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 7052 and Federal Rule of Civil Procedure 52.

Three bank accounts are involved in this proceeding: a savings account in Debtor's name, number 236169; a certificate of deposit in the name of Daryl Brown, Minor, by George Brown, Jr., Trustee, number 236 169 600; and a savings account in the name of Jennifer Brown, Minor, by George Brown, Jr., Trustee, number 011–603002. Daryl and Jennifer Brown are Debtor's children. Despite Debtor's children's names appearing on two of the accounts, the IRS does not concede the children's ownership of the funds in those accounts but asserts that Debtor is in fact the beneficial owner of those funds. In support of its position, the IRS has established that the Debtor freely deposited and withdrew funds from the children's accounts.

The IRS asserts a claim for delinquent taxes in the amount of $20,871.67. The IRS assessed this amount on November 9, 1987. On May 8, 1988, the IRS filed a notice of tax lien. A Notice of Levy, dated June 22, 1988, was served on the Bank on July 14, 1988. The IRS instructed the Bank not to remit the funds but to hold them pending further developments. The following day, July 15, 1988, Debtor filed his Chapter 13 petition in this case. The Debtor claims never to have received a notice of seizure in connection with the levy on the funds held by the Bank; in any event, it is undisputed that no such notice of seizure could have been served on the Debtor prior to the filing of his petition.

The IRS' position is that the pre-petition Notice of Levy effectively terminated any interest of the Debtor in the funds held by the Bank and transferred title of the funds to the IRS. The IRS relies upon *Phelps v. United States*, 421 U.S. 330, 95 S.Ct. 1728, 44 L.Ed.2d 201 (1975) for the proposition that a prepetition Notice of Levy served on a third party holding property belonging to

a debtor establishes a custodial relationship between the third party and the IRS, preventing the property from being included as property of the estate in any subsequent bankruptcy of the debtor. *Phelps* involved a pre-bankruptcy assignment for the benefit of creditors where the assignee converted the original assets to cash. The IRS levied on the proceeds, held by the assignee, accomplishing this before the bankruptcy. The Court held that, under the Summary/Plenary distinctions of the Bankruptcy Act, the Bankruptcy Referee had no jurisdiction to adjudicate any claim for the funds levied upon by the IRS. Those funds would have to be recovered, if at all, in a plenary suit in district court.

The IRS asserts that *Phelps* has continuing validity after *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). *Whiting Pools* held that the IRS could be subject to a turnover order in a bankruptcy case following its seizure of tangible personal property belonging to the debtor. The IRS distinguishes *Phelps* and *Whiting Pools* because *Phelps* dealt with cash and cash equivalents with a value less than the amount of the tax liability subject to the lien while *Whiting Pools* dealt with tangible personal property worth more than the amount of such tax liability.

In *Whiting Pools*, the IRS levied upon and took possession, pre-petition, of tangible business assets of the debtor having a liquidation value of approximately $35,000 and a going-concern value of approximately $160,000 by reason of a tax delinquency of approximately $92,000. The issue before the Court was whether the property could be recovered by the debtor-in-possession by turnover under Section 542, with the Court holding that it could.

In support of the distinction between tangible property and cash equivalents, the IRS cites the line of cases exemplified by *In re Professional Technical Services, Inc.*, 71 B.R. 946 (Bankr.E.D.Mo.1987) and, in support of the post-*Whiting Pools* vitality of *Phelps*, the IRS cites *United States v. National Bank of Commerce*, 472 U.S. 713, 105 S.Ct. 2919, 86 L.Ed.2d 565 (1985).

*National Bank of Commerce* is not a bankruptcy case. It involved the issue of whether the IRS could levy upon a joint bank account without showing the extent of the taxpayer's interest in the account. The Court held that the IRS could levy upon the entire account. The delinquent taxpayer's right to withdraw all the funds in the account gave rise to the type of interest which could be levied upon by the IRS, regardless of the co-depositors' interests. The right of the IRS to levy was a federal right which controlled even though the applicable state law prevented a private creditor from exercising this right to withdraw.

Alternatively, if the IRS is subjected to a turnover order with respect to the funds held by the Bank, the IRS seeks adequate protection of its interest securing Debtor's tax liability.

In response, the Debtor asserts that *Whiting Pools* should control with respect to the turnover order. The Debtor cites in support a line of cases exemplified by *In re Dunne Trucking Co.*, 32 B.R. 182 (Bankr. N.D.Iowa 1983). As to the adequate protection issue, the Debtor takes the position that the IRS is bound by the Debtor's confirmed plan as a result of its failure to object thereto. The plan provides for a full payoff of all creditors, including the IRS, upon Debtor's sale or refinance of his residence at the end of the plan period.

■ Debtor also interposes his children's rights to some of the funds held by the Bank as a basis for invalidating the IRS levy. *National Bank of Commerce* does, however, support the IRS' position that the children's interest in the funds does not prevent those funds from being subject to an IRS levy against the Debtor. As previously pointed out, the evidence shows that, regardless of the children's interest, the Debtor had a right to, and did, freely deposit and withdraw funds from the children's accounts. Thus, the Debtor had the same right to withdraw funds which the Court in *National Bank of Commerce* held sufficient to enable the IRS to levy upon the joint bank account in that case in enforcing the tax lien against the taxpayer

co-depositor. Here, as well, Debtor's right to withdraw from the children's accounts was sufficient to enable the IRS to levy upon those accounts in enforcing the tax lien against the Debtor. The issue before this Court, therefore, is not whether the IRS had the power to levy against the funds in the children's accounts—it did. The issue is whether the levied-upon funds are subject to a turnover order in Debtor's bankruptcy.

## PROPERTY OF THE ESTATE

Section 542 of the Bankruptcy Code, 11 U.S.C. Sec. 542, subjects an entity in possession, custody or control of certain types of property of the estate to an order requiring that entity to turn over such property to the trustee or debtor-in-possession. The statutory scheme, of which Section 542 is an integral part, clearly includes, within the ambit of property of the estate, property in the possession of third parties other than the debtor at the date of the filing of the debtor's petition. It is, thus, a radical departure from the scheme under the Bankruptcy Act, under which the summary jurisdiction of the Bankruptcy Referee was limited to property in the actual or constructive possession, custody or control of the bankruptcy court and did not extend to property held by third persons under claim of right. *Phelps* was decided under the Bankruptcy Act's scheme and, as interpreted by *Whiting Pools* (462 U.S. at 206 n. 13, 103 S.Ct. at 2314 n. 13), is no longer controlling once the summary-plenary jurisdiction distinction has been abolished. Furthermore, the citation in *National Bank of Commerce* to *Phelps* (472 U.S. at 720–21, 105 S.Ct. at 2924–25) is only to support the limited proposition that an IRS levy transfers constructive possession of the property levied upon to the IRS, setting up a custodial relationship between the third-party served with a Notice of Levy and the IRS. To the same limited effect is *G.M. Leasing Corp. v. United States*, 429 U.S. 338, 350, 97 S.Ct. 619, 627, 50 L.Ed.2d 530 (1977) (stating that intangible property need not be physically seized for a levy to be effected).

These limited propositions regarding a levy's effect of transferring possession to the IRS are very much beside the point in deciding the controlling issue in this and other cases of the *Whiting Pools* genre.

■ The *Whiting Pools* Court looked upon the Bankruptcy Code as supplanting the nonbankruptcy remedies of secured creditors against property of their debtors. (462 U.S. at 206–07, 103 S.Ct. at 2314–15.) This modification of secured creditors' rights is intended to foster the policy of encouraging reorganization of a troubled business (462 U.S. at 203–04, 103 S.Ct. at 2312–13), and is particularly applicable in Chapter 11 cases. (462 U.S. at 208, 103 S.Ct. at 2315.) Although the court left open the issue of the applicability of the same policy in Chapter 13 cases (462 U.S. at 208–09 n. 17, 103 S.Ct. at 2315 n. 17), it did not rule out that possibility and, in this Court's opinion, the policy behind individual debt adjustment reorganizations under Chapter 13 is sufficiently similar to the policy behind Chapter 11 to support application of the *Whiting Pools* rationale. In essence, then, a secured creditor's power to repossess collateral is looked upon as nothing more than a remedy to enforce the debt, a remedy which is supplanted in the event of bankruptcy by the right to adequate protection. So long as the secured creditor has only exercised the remedy of repossession and has not effected a transfer of title to the repossessed property, the Bankruptcy Code steps in to change the remedial scheme to encourage reorganization, all the while protecting the secured creditor's interest by affording it adequate protection. Under *Whiting Pools* the levying IRS is merely a secured creditor with a possessory lien, no more. Thus, the IRS must look to Section 363 for protection, rather than to the non-bankruptcy remedy of possession.

■ Against such a background the question regarding a levy becomes simply whether it is but another form of secured creditor remedy·or whether it is a substantive transfer of title from the debtor to the IRS. According to the *Whiting Pools* analysis of the relevant Internal Revenue Code provisions, substantially unchanged since that decision was rendered, the levy power may be superior to state-law enforcement powers available to private secured creditors but that power is still no more than remedial. (462 U.S. at 209–11, 103 S.Ct. at 2315–17). The controlling issue is, therefore, whether the levied-upon property is subject to a Section 542 turnover order. That, in turn, depends upon whether such property may be used, sold or leased by the trustee under Section 363. Section 363, in turn, enables the trustee to use, sell or lease any property of the estate, including cash collateral, subject to the provisions of Section 363(c)(2), so long as the interests of all other parties in the property are adequately protected. Thus, any property of the estate may be subject to a turnover order on the condition that any other parties' interests in such property are adequately protected.

The *Whiting Pools* decision did not turn on the nature of the property as cash or tangible personal property or on whether a surplus or deficiency exists. The *Whiting Pools* court stated the contrary definitively:

> Of course, if a tax levy or seizure transfers to the IRS ownership of the property seized, 542(a) may not apply. The enforcement provisions of the Internal Revenue Code of 1954, 26 U.S.C. 6321–6326 (1976 ed. and Supp. V), do grant to the Service powers to enforce its tax liens that are greater than those possessed by private secured creditors under state law. See *United States v. Rodgers*, 461 U.S. 677, 682–683 [103 S.Ct. 2132, 2136–2137, 76 L.Ed.2d 236] (1983); *id.*, at 713, 717–718, and n. 7 [103 S.Ct. at 2152, 2155–2156, and n. 7] (concurring in part and dissenting in part); *United States v. Bess*, 357 U.S. 51, 56–57 [78 S.Ct. 1054, 1057–1058, 2 L.Ed.2d 1135] (1958). But those provisions do not transfer ownership of the property to the IRS.

462 U.S. at 209–10, 103 S.Ct. at 2316 (citations omitted).

The method whereby the IRS may gain title to property in enforcing its tax lien is the lien foreclosure suit. The difference

between the lien foreclosure suit and the administrative levy remedy involved in this case was aptly described by the court in *National Bank of Commerce:*

> A federal tax lien, however, is not self-executing. Affirmative action by the IRS is required to enforce collection of the unpaid taxes. The Internal Revenue Code provides two principal tools for that purpose. The first is the lien-foreclosure suit. Section 7403(a) authorizes the institution of a civil action in federal district court to enforce a lien "to subject any property, of whatever nature, of the delinquent, or in which he has any right, title, or interest, to the payment of such tax." Section 7403(b) provides: "All persons having liens upon or claiming any interest in the property involved in such action shall be made parties thereto." The suit is a plenary action in which the court "shall ... adjudicate all matters involved therein and finally determine the merits of all claims to and liens upon the property." 7403(c). See generally *United States v. Rodgers,* 461 U.S. 677, 680–682 [103 S.Ct. 2132, 2135–2137, 76 L.Ed.2d 236] (1983). The second tool is the collection of the unpaid tax by administrative levy. The levy is a provisional remedy and typically "does not require any judicial intervention." *Id.,* at 682 [103 S.Ct. at 2137]. The governing statute is 6331(a). See n. 1, *supra.* It authorizes collection of the tax by levy which, by 6331(b), "includes the power of distraint and seizure by any means."
>
> ....
>
> The administrative levy has been aptly described as a "provisional remedy." 4 Bittker, Par. 111.5.5, at 111–108. In contrast to the lien-foreclosure suit, the levy does not determine whether the Government's rights to the seized property are superior to those of other claimants; it, however, does protect the Government against diversion or loss while such claims are being resolved.

472 U.S. at 720–21, 105 S.Ct. at 2925.

In fact, with the issue properly understood in this way, the *National Bank of Commerce* case cited by the IRS supports the Debtor, because it so heavily relies upon the nature of the levy power as a provisional remedy rather than as transferring title to the IRS. That case involved the IRS' right to levy against a joint bank account. The Court found that the taxpayers had a sufficient attachable interest based upon the delinquent taxpayer's right to withdraw all the funds in the account. The Court held the levy valid without regard to whether that taxpayer had title to *any* of the funds and without regard to the interests of the taxpayer's co-depositors. In response to the objection that third-party rights were being trampled upon, the Court emphasized repeatedly that the levy proceeding is only provisional and does not determine the substantive rights to the levied-upon property, these latter rights being subject to determination by a subsequent administrative or judicial proceeding. It is that very provisional nature of the levy remedy, not affecting any substantive rights or effecting any substantive ownership transfer, which was dispositive in *Whiting Pools* and is dispositive in this case as well, particularly in view of the extension by *National Bank of Commerce* of this provisional characterization of the levy remedy to situations involving funds in a bank account.

The subsequent lower court cases relied upon by the IRS misread *Whiting Pools* as limiting that holding to those situations where a debtor has a right to redeem the levied-upon property or the right to a surplus upon sale. It is only in these situations, hold those cases, that the levy can be said to be incomplete as a transfer of ownership to the IRS, and it is therefore only in these situations that the debtor can successfully pursue a turnover action. *See, e.g., In re Professional Technical Services,* 71 B.R. 946, 949 (Bankr.E.D.Mo.1987). Such cases misconstrue the *Whiting Pools* holding (at 462 U.S. 211, at 103 S.Ct. 2316). That Court, it is true, mentions the right to any surplus (and does not specifically mention the right to redeem) but does so only by way of example, illustrating a lack of transfer of ownership at the levy stage. The central proposition on which the Court relies in that discussion is stated as follows: "They (the levy and seizure provisions of the Internal Revenue Code) are

provisional remedies that do not determine the Service's rights to the seized property, but merely bring the property into the Service's legal custody." Id. (Citations omitted). The fact that the title to the levied-upon property does not pass to the IRS immediately upon levy is sufficient to support the *Whiting Pools* Court's holding, and that fact obtains regardless of whether the property is cash or tangible personal property and regardless of whether a surplus exists. Requiring an ability to redeem or a surplus proves too much; neither would exist in the case of an insolvent debtor all of whose nonexempt property is subject to judgment liens nor would they exist in the case of a debt undersecured by property the debtor subjectively does not intend to redeem. Yet there is no suggestion of extending the *Professional Technical Services* distinction beyond cash or cash equivalents. Thus, in this Court's view, the existence of "identifiable interests" (71 B.R. at 949), is not the crucial question. Under the Internal Revenue Code's levy provisions, title does not pass to the IRS upon levy, regardless of whether the property is cash or a cash equivalent and regardless of whether a surplus exists. Accordingly, this property may be property of the estate under Section 541, subject, as in *Whiting Pools*, to the lien of the IRS.

This Court need not determine when, under the administrative remedy provisions of levy and seizure, title to property does pass sufficiently so that it is no longer property of the estate. Suffice it to say that in this case, where the filing of the petition came before both notice of seizure and transfer of the funds to the IRS, the funds may be property of the estate. *See In re Dunne Trucking Co.*, 32 B.R. 182, 187–88 (Bankr. N.D.Iowa) (levy process itself not complete until notice of seizure sent to taxpayer).

## ADEQUATE PROTECTION

The foregoing analysis, however, keying, as it does, the IRS' relinquishment of its levy power in bankruptcy to its right to adequate protection, reinforces the IRS' right to adequate protection in this case. The property is subject to turnover under Section 542 only if it, (a) is ultimately determined to belong to the Debtor, and not the children, and (b) may be used under Section 363, which requires adequate protection. There is no basis in this case for finding a waiver of this right, as the Debtor contends. The failure to object under Section 1325 cannot be construed as a waiver of rights under Section 363, particularly in this case where, until this point, the IRS was in constructive possession of property it may have considered as affording it adequate protection. Furthermore, Section 1322(b)(10) provides that a plan may not contain any provision inconsistent with the Bankruptcy Code. A failure to provide the IRS with adequate protection for its interest in the levied-upon funds would be inconsistent with Section 363. At the same time, this Court lacks a fully developed factual record upon which to base a determination of whether the IRS is adequately protected.

## CHILDREN'S RIGHTS

Finally, this Court in this proceeding expressly reserves the issue of the Debtor's entitlement to the funds held by the Bank vis-a-vis the Debtor's minor children. At any subsequent proceeding to determine that entitlement, the interests of the Debtor's children must be properly represented. A status hearing is hereby set for December 6, 1989 at 10:30 a.m. to schedule such further hearings as may be required in accordance with this Memorandum Opinion.