**In re George BROWN, Jr., Debtor.**

**George BROWN, Jr., Plaintiff,**

v.

**The EVANSTON BANK & Internal Revenue Service, Defendants.**

**No. 90 C 1764.**

United States District Court, N.D. Illinois, E.D.

Feb. 15, 1991.

Gregory K. Stern, Chicago, Ill., for plaintiff.

Benjamin R. Norris, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., Mayer Y. Silber, Sp. Asst. U.S. Atty., Chicago, Ill., for I.R.S.

Catherine C. MacCarthy, Robert E. Shapiro, Barack, Ferrazzano, Kirschbaum & Perlman, Chicago, Ill., for the Evanston Bank.

## ORDER

NORGLE, District Judge.

Before the court is an appeal by the Internal Revenue Service ("IRS") from an order of the Bankruptcy Court compelling the turnover of bank account funds upon which the IRS had levied prior to the filing of the bankruptcy petition of debtor George Brown, Jr. ("Brown"). For the reasons discussed below, the Bankruptcy Court's decision is reversed.

## FACTS

On November 9, 1987, the IRS assessed a $20,871.67 delinquent tax debt against Brown. On May 8, 1988, the IRS filed a notice of tax lien on three accounts at the Evanston Bank: a savings account in Brown's name, a savings account maintained by Brown as trustee for his minor daughter, and a certificate of deposit maintained by Brown as trustee for his minor son. The IRS served a notice of levy on the Evanston Bank on June 22, 1988. The funds in the levied accounts totalled $18,429.78—over $2,000 less than the amount of Brown's tax debt. The bank did not remit the levied-upon funds to the IRS, but held the funds in a segregated account, pending further developments. On June 23, 1988, the day after the levy was served, Brown filed a Chapter 13 petition in the U.S. Bankruptcy Court for the Northern District of Illinois.

On November 1, 1988, Brown filed a complaint against the bank and the IRS with the Bankruptcy Court, seeking a turnover of the $18,429.78, pursuant to 11 U.S.C. § 542. Brown amended this complaint on February 10, 1989. A hearing on this issue was held before U.S. Bankruptcy Judge Erwin I. Katz on August 14, 1989.

On November 1, 1989, Judge Katz entered an order finding that the IRS had the power to levy against the funds in the children's accounts, but that the levy did not transfer ownership of the funds to the IRS. 106 B.R. 546. The bankruptcy court reasoned that because the IRS levy had not extinguished all of Brown's rights to the bank accounts, the funds in question were subject to turnover—and consequently, to become part of the bankruptcy estate—provided that the bankruptcy plan would "adequately protect" the government's interest in these funds for the purposes of 11 U.S.C. § 363. Judge Katz reserved ruling on the issue of adequate protection and on the issue of whether the funds in question belonged to Brown or to his children.

On February 9, 1990, the Bankruptcy Court issued an order allowing the modification of the Debtor's First Amended Plan. On the same day, the court issued a second order which found that the IRS claim was adequately protected under the modified First Amended Plan and that the two accounts maintained in trust for the children should be turned over to the children. The IRS here appeals from each of the three Bankruptcy Court orders mentioned above.

## DISCUSSION

On an appeal from an order of the bankruptcy court, factual findings are reviewed under a clearly erroneous standard and conclusions of law are reviewed *de novo*. *In re Bonnett*, 895 F.2d 1155, 1157 (7th Cir.1990). Because the present appeal involves only the legal conclusions of the bankruptcy court, this court reviews the issues presented *de novo*.

The pivotal inquiry in this appeal is whether Brown retained any right or interest in the bank accounts after the pre-petition IRS levy on those funds. If he did, then the funds must be deemed property of the Debtor's estate under 11 U.S.C. § 541 and the accounts would be subject to a turnover order under 11 U.S.C. § 542(a)—assuming that the government's interest in collecting the tax debt would be adequately protected by the approved bankruptcy plan. On the other hand, if the

IRS levy extinguished all of Brown's rights to and interest in these funds, then the funds are not property of Debtor's estate under 11 U.S.C. § 541, and may not be subject to a § 542 turnover.

■ As a preliminary matter, the court must determine whether the IRS properly could levy upon the two accounts maintained by Brown as trustee for his minor children. The bankruptcy court, applying the reasoning of *United States v. National Bank of Commerce*, 472 U.S. 713, 105 S.Ct. 2919, 86 L.Ed.2d 565 (1985), determined that it could. "As previously pointed out, the evidence shows that, regardless of the children's interest, the Debtor had a right to, and did, freely deposit and withdraw funds from the children's accounts." *In re Brown*, 106 B.R. 546, 548 (Bankr.N.D.Ill. 1989). The bankruptcy court concluded that the "Debtor's right to withdraw from the children's accounts was sufficient to enable the IRS to levy upon those accounts in enforcing the tax lien against the Debtor. The issue before this Court, therefore, is not whether the IRS had the power to levy against the funds in the children's accounts—it did." *Id.* These findings are not challenged on appeal and will not be disturbed by this court.

Although the bankruptcy court's opinion appears clearly to favor the IRS on this limited issue, the IRS nevertheless raises the issue on appeal. In arguing this issue, both parties appear to focus on the bankruptcy court's subsequent finding that two of the three accounts at the Evanston Bank were property of Brown's children rather than Brown himself. *See* February 9, 1990 order, p. 1. Both parties evidently read this portion of the February 9, 1990 order as bearing on the preliminary issue of whether the IRS properly could levy on these bank accounts in the first instance.[1] (If the accounts belonged to his children rather than Brown himself, the IRS may not have been able to levy upon those ac-

counts to collect Brown's delinquent tax debt.) However, the transcripts from the hearing preceding the entry of the February 9, 1990 order reveal that Judge Katz did not intend for this order to undermine his earlier findings as stated in the November 1, 1989 opinion.

I think that it was necessary to get the children in here to be represented because we are dealing with their interests. However, in light of the statements and the opinions I've already given, I've already basically held that the lien did not transfer any interest to the United States. Let's think and speak it out at the same time. If this is still the debtor's money, then I think there is adequate protection with one little change in the amended plan that's been proposed.

If this is not the debtor's money, then of course I think the government has no right to it at all. I think there is a hybrid situation where it can be the children's money, but the debtor having asserted some control over it makes that money subject to a lien attaching because of the. way that the debtor handled the money. I think that's what's happened here. But again, I don't think that's crucial to my decision.

February 6, 1990 Transcript, p. 10. The bankruptcy court, in finding that two of the Evanston Bank accounts were property of Brown's children, evidently did not intend to detract from his earlier finding that the IRS had the right to levy on all three accounts at the Evanston Bank. Because the debtor does not argue that the bankruptcy court erred in finding that the IRS had the right to levy on the "children's" funds, that finding will stand on appeal.[2]

■ Next, the court must address the more difficult question of whether, after the execution of the levy, Brown retained any legal or equitable interests in the bank accounts which could bring these accounts

---

1. *See* Appellate Brief of the United States, p. 8–10; Appellee's Appellate Brief at pp. 3–4 ("The Debtor does not concede that the Bankruptcy Court erred in finding that the funds levied upon by the IRS were actually property of the Debtor's minor children.")

2. At this point, the court also notes that the Debtor has not contested the procedural propriety of the levy, either in the bankruptcy court proceedings or on this appeal. The court will therefore assume that all of the procedural requirements for the levy have been met.

into the bankruptcy estate. The Bankruptcy Code provides:

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located:

(1) Except as provided in subsections (b) and (c)(2) of this section, *all legal or equitable interests of the debtor in property as of the commencement of the case.* [Emphasis added.]

11 U.S.C. § 541(a)(1).

■ Although the broad wording of § 541 indicates that virtually any identifiable interest which a debtor may have in property will cause that property to be included in the bankruptcy estate, § 541 does not address the underlying issue of whether the debtor has an identifiable interest in a given asset in the first place. This determination must be resolved by the application of non-bankruptcy law. *In re Farmers Markets, Inc.,* 792 F.2d 1400, 1402 (9th Cir.1986); *In re Caldwell,* 111 B.R. 836, 837 (Bankr.C.D.Cal.1990); *In re Paul,* 85 B.R. 850, 851 (Bankr.E.D.Ca. 1988); *see In re Professional Technical Services,* 71 B.R. 946, 949 (Bankr.E.D.Mo. 1987) (Even the broad scope of 11 U.S.C. § 541(a)(1) cannot bring into the debtor's estate assets in which the debtor has no property interests at the commencement of the bankruptcy proceeding).

To determine whether the IRS levy divested Brown of all his property interests in the bank accounts, this court must interpret the levy provisions of the Internal Revenue Code. These provisions state, in relevant part:

(a) **Authority of Secretary.**—If any person liable to pay any tax neglects or refusés to pay the same within 10 days after notice and demand, it shall be lawful for the Secretary to collect such tax (and such further sum as shall be sufficient to cover the expenses of the levy) by levy upon all property and rights to property (except such property as is exempt under section 6334) belonging to such person or on which there is a lien provided in this chapter for the payment of such tax....

(b) **Seizure and sale of property.**—The term "levy" as used in this title includes the power of distraint and seizure by any means.... In any case in which the Secretary may levy upon property or rights to property, he may seize and sell such property or rights to property (whether real or personal, tangible or intangible).

26 U.S.C. § 6331.

■ When the IRS serves a levy upon a saleable asset (whether tangible or intangible), the debtor retains at least two significant property interests: (1) the right to redeem the property prior to (or, in the case of real estate, within 180 days after) an IRS sale,[3] and (2) the right to receive any surplus funds generated from the sale of property.[4] *In re Professional Technical Services,* 71 B.R. at 949. For such assets, the IRS procedures for notice of seizure and notice of sale (26 U.S.C. § 6335(a) and (b), respectively) perform the essential function of safeguarding these

3. *See* 26 U.S.C. § 6337, which provides, in relevant part:
　(a) **Before sale.**—Any person whose property has been levied upon shall have the right to pay the amount due, together with the expenses of the proceeding, if any, to the Secretary at any time prior to the sale thereof, and upon such payment, the Secretary shall restore such property to him, and all further proceedings in connection with the levy on such property shall cease from the time of such payment.
　(b) **Redemption of real estate after sale.**—
　　(1) **Period.**—The owners of any real property sold as provided in section 6335 ... or any

person having any interest therein ... shall be permitted to redeem the property sold or any particular tract of such property, at any time within 180 days after the sale thereof.

4. *See* 26 U.S.C. § 6342. This provision, captioned "Application of proceeds of levy," provides in relevant part:
　(b) **Surplus proceeds.**—Any surplus proceeds remaining after the application of subsection (a) shall, upon application and satisfactory proof in support thereof, be credited or refunded by the Secretary to the person or persons legally entitled thereto.

post-levy property interests.[5] These notice procedures ensure that the debtor has a sufficient opportunity to assert his right of redemption or his right to recover surplus sale proceeds.

■ However, when the IRS levies upon a nonsaleable asset (i.e., cash or a cash equivalent), the debtor does not retain any of the substantive property interests which the notice and sale procedures of § 6335 are designed to protect. Cash and cash equivalents cannot meaningfully be "redeemed" for the purposes of 26 U.S.C. § 6337,[6] or "sold" as contemplated in 26 U.S.C. § 6342.[7] Because the property interests which survive a levy upon saleable property do not exist when the levied-upon property is cash or a cash equivalent, the notice and sale provisions of 26 U.S.C. § 6335, serve no identifiable purpose for levies on such property.[8]

The case law is divided on the issue of whether a pre-petition levy extinguishes all of a debtor's interest in cash equivalent property. *Compare Altman v. Commissioner of Internal Revenue Service*, 83

B.R. 35 (D.Haw.1988); *In re Paul; Professional Technical Services; DiFlorio v. United States*, 30 B.R. 815 (N.D.N.Y.1983) *with In re Dunne Trucking Co.*, 32 B.R. 182 (Bankr.N.D.Iowa 1983) and *In re Davis*, 35 B.R. 795 (Bankr.W.D.Wash. 1983).[9] While the former cases hold that a debtor does not retain any interest in cash equivalent property which has been subject to a pre-petition levy, the latter cases hold that a debtor does retain some interest in this property. Significantly, these latter cases do not adequately identify what residual rights remain in a debtor after such a levy.

The *Davis* and *Dunne* opinions both rely heavily on the Supreme Court opinion in *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). In *Whiting Pools*, the Supreme Court held that the reorganization estate includes the property of the debtor that has been seized by a creditor prior to the filing of a petition for reorganization. However, the *Whiting Pools* case involved a levy on tangible corporate assets in the context of

---

5. This provision states in relevant part:
   (a) **Notice of seizure.**—As soon as practicable after seizure of property, notice in writing shall be given by the Secretary to the owner of the property (or, in the case of personal property, the possessor thereof).... Such notice shall specify the sum demanded and shall contain, in the case of personal property, an account of the property seized....
   (b) **Notice of sale.**—The Secretary shall as soon as practicable after the seizure of the property give notice to the owner, in the manner prescribed in subsection (a), and shall cause a notification to be published.... Such notice shall specify the property to be sold, and the time, place, manner, and conditions of the sale thereof....
   26 U.S.C. § 6335.

6. *See Professional Technical Services*, 71 B.R. at 950 ("This court concludes that in the present case involving accounts receivable, the rights of redemption and surplus have no application"); *In re Paul*, 85 B.R. 850, 853 (Bankr.E.D.Ca.1988) ("the redemption and surplus rights of saleable property have no application to cash or its equivalent ...").

7. *See, e.g., In re Davis*, 35 B.R. 795, 799 (Bankr. W.D.Wash.1983) ("This court recognizes that a sale is not possible when the property is cash or a cash equivalent"); *In re Dunne Trucking Co.*, 32 B.R. 182, 188 (Bankr.N.D.Iowa 1983) (A sale

is not possible when the property is cash or a cash equivalent).

8. Arguably, a taxpayer may retain some post-levy interest in even cash equivalent property when the value of the property exceeds the amount of the debt. However, where, as here, the tax debt exceeds the value of the cash equivalent levied upon, the taxpayer cannot even claim this residual interest.

9. The parties cite three additional cases which arguably support the position that a pre-petition levy on a cash equivalent asset does not divest the debtor of all rights to that asset. *In re Suppliers, Inc.*, 41 B.R. 520 (Bankr.E.D.Ky. 1984); *In re AIC Indust., Inc.*, 83 B.R. 774 (Bankr.D.Colo.1988); *In re Cleveland Graphic Reproduction, Inc.*, 78 B.R. 819 (Bankr.N.D.Ohio 1987). These cases, however, are limited by the fact that the assets at issue in each of these cases were accounts receivable which, though intangible, are not "cash equivalents" for the purposes of this analysis. (Unlike the cash equivalents at issue here, accounts receivable may be sold at a tax sale—at or below their face value, depending upon the purchaser's perception of the success and ease of collection efforts.) Thus, these three decisions do not support the position that a debtor retains some post-levy interest in *cash equivalent*, as opposed to merely intangible, property.

a corporate reorganization under Chapter 11 of the Bankruptcy Code. Further, the *Whiting Pools* opinion appears clearly to contemplate only levies upon such property. The court stated: "Ownership of the property is transferred only when the property is sold to a bona fide purchaser at a tax sale." 462 U.S. at 211, 103 S.Ct. at 2317. The court noted that the notice of sale provision of the Internal Revenue Code (26 U.S.C. § 6335(b)) refers to the debtor as the "owner" of the property. *Id.* As discussed above, however, a tax sale is not possible for cash equivalent property, and the notice of sale provisions of § 6335 are wholly inapplicable to the collection of such property. Thus, *Whiting Pools,* which did not address the effect of a pre-petition levy on cash equivalent property, does not support the position that a debtor retains post-levy rights in cash equivalent property.

Moreover, an important policy consideration at the core of the *Whiting Pools* decision was that: "Congress presumed that the assets of a debtor would be more valuable in a rehabilitated business than if 'sold for scrap.'" 462 U.S. at 203, 103 S.Ct. at 2313. In short, the value of a business is greater than the sum of the parts. (For example, the assets at issue in *Whiting Pools* had an estimated liquidation value of approximately $35,000, but a going-concern value of $162,876 as part of Whiting's business. 462 U.S. at 200, 103 S.Ct. at 2311.) Unlike *Whiting Pools,* the present case concerns a levy upon cash-equivalent, personal assets in the context of an individual debt adjustment reorganization under Chapter 13 of the Bankruptcy Code.

These factual distinctions greatly weaken the application of *Whiting Pools* to the present case. First, as discussed in detail above, a debtor retains certain post-levy interests in saleable property which do not apply to cash equivalent property. Second, the disparity between the liquidated value and the going concern value of a tangible corporate asset is wholly inapplicable here, where the assets at issue belonged to an individual rather than a going concern and where the value of those assets would be the same in any context. Third, the policy justifications which the *Whiting Pools* court applied in that Chapter 11 context do not apply here. By seizing and liquidating the corporate assets of the Chapter 11 business debtor, the IRS in *Whiting Pools* might have destroyed the debtor corporation and thus undermined the fundamental purpose of Chapter 11. Without its essential business assets, the company could not function and generate the income necessary to keep it in business and ultimately pay off its creditors. In this case, by contrast, there is no indication that the levied-upon accounts will affect the individual debtor's ability to generate income and reorganize his finances.[10]

Also in *Whiting Pools,* the Supreme Court limited the application of *Phelps v. United States,* 421 U.S. 330, 95 S.Ct. 1728, 44 L.Ed.2d 201 (1975), a pre-Code case which held that a pre-petition IRS levy on a bank account brought the account into the constructive possession of the IRS and beyond the reach of the bankruptcy court. *Phelps,* 421 U.S. at 334–336, 95 S.Ct. at 1731–32. The *Phelps* court reasoned that the possessory interest which the levy created in the IRS was sufficient to remove the funds from the bankruptcy court's summary jurisdiction under the then applicable Bankruptcy Act. The court concluded that the bankruptcy court lacked jurisdiction to enter a § 542 order for turnover of the account. The *Whiting Pools* court noted that the primary reasoning of the *Phelps* decision was subsequently undermined by the enactment of the Bankruptcy Code—which eliminated the summary/plenary jurisdiction distinction and expanded the jurisdictional reach of the bankruptcy court. *Whiting Pools,* 462 U.S. at 206, n. 13 and at 210, n. 18, 103 S.Ct. at 2314, n. 13 and at 2316, n. 18.[11] The court notes that

---

**10.** Like *Whiting Pools, Dunne* and *Davis* both involve Chapter 11 rather than Chapter 13 bankruptcy reorganizations.

**11.** Some courts have viewed *Whiting Pools* as essentially invalidating *Phelps* in its entirety. *See, e.g., Davis,* 35 B.R. at 797. However, it is difficult to see why the passage of the Bankruptcy Code would invalidate those portions of the

the *Whiting Pools* Court never address-es—either in limiting *Phelps*, or elsewhere in its opinion—whether a debtor retains any post-levy interest in cash equivalent property. The court therefore views this as an open issue. Consequently, the re-liance of the *In re Davis* and *In re Dunne* courts on *Whiting Pools*, is misplaced.

The bankruptcy court in *In re Davis*, relying heavily upon *Whiting Pools*, held that a debtor retains post-levy rights in cash equivalent property until the property is surrendered to the IRS and the debtor receives a notice of seizure. *Davis*, 35 B.R. at 798.

This court recognizes that a sale is not possible when the property is cash or a cash equivalent. This characteristic of cash, however, does not cause the tax-payer/debtor to lose all his rights in the cash upon the notice of levy by the IRS. The Internal Revenue Code provides that as soon as practicable after seizure of property, a notice of seizure must be sent. 26 U.S.C. § 6335(a).

35 B.R. at 799.

There are several problems with the *Davis* holding. First, although the court states that the taxpayer/debtor does not "lose all his rights in the cash upon the notice of levy by the IRS," the court does not identify what rights the debtor retains. The court appears to refer to the right to receive a notice of seizure pursuant to § 6335(a). However, as discussed above, this procedural right only has meaning to the extent that it protects an underlying substantive right—i.e., a right of redemp-

tion or a right to recover excess proceeds of a tax sale. As neither of these substan-tive rights applies to cash property, it is difficult to see how the empty procedural right to notice can be meaningful.[12] Fur-ther, under the Internal Revenue Code, only the possessor of personal property—here the bank and not the debtor—is enti-tled to notice of seizure under § 6335(a).[13] Thus, if anyone is entitled to notice of seizure, the bank—as "possessor" of the accounts—would be entitled to that notice, and not the debtor. It is difficult to imag-ine how the bank's right (if any) to notice of seizure could create a property interest in the debtor.

*Dunne*, like *Davis*, held that a tax debtor retains a post-levy interest in cash equiva-lent property which is extinguished only upon proper service of a § 6335(a) notice of seizure. *Dunne*, 32 B.R. 182, 188.

Although a sale is not possible when the property is cash or a cash equivalent, [citation omitted], notice of seizure still appears to be a limitation on the Ser-vice's levy authority under § 6331(a). This is because a levy is not considered complete unless a notice of seizure is sent to the owner or holder of rights to property levied upon. I.R.C. § 6502(b) (CCH 1981). If there is a delay in this notice, the statute of limitations for the collection of tax after assessment will continue to run, rendering the tax ulti-mately uncollectible. *Id.* § 6502(a); *see also* M. Saltzman, supra, ¶ 14.13, at 14-57. Notice of seizure appears then to be not only a condition precedent to an ef-fective sale, but also to be completion of

*Phelps* opinion which did not rely on the juris-dictional provisions of the old Bankruptcy Act (e.g., the Court's analysis of the levy provisions of the tax code). Notably, several cases have distinguished *Whiting Pools* and have cited *Phelps* for the proposition that a debtor retains no post-levy interest in cash equivalent proper-ty. *DiFlorio*, 30 B.R. at 818; *Altman*, 83 B.R. at 38.

12. As policy matter, it is significant to note that in the present case, the debtor received at least three different statutory notices: notice of as-sessment of the tax debt, notice of lien on the bank accounts, and notice of levy on the ac-counts. The debtor has neither challenged any of these notices nor articulated what substantive

benefit he would have obtained from a notice of seizure on the accounts. It would be trivial to hold that the debtor here has an affirmative right to an additional notice which, in contrast to the previous notices, has no practical effect.

13. "As soon as practicable after seizure of prop-erty, notice in writing shall be given by the Secretary to the owner of the property (*or, in the case of personal property, the possessor there-of*)...." [Emphasis added.] 26 U.S.C. § 6335(a). *See also* Treas.Reg. § 301.6335–1(a) ("The written notice [of seizure] shall be deliv-ered to the owner (*or to the possessor, in the case of personal property*)...." [Emphasis add-ed.])

the levy proceedings. The notice set forth in I.R.C. § 6335 (CCH 1981) "can be viewed as protection of the taxpayer's continued interest in the seized property." *In re Bush Gardens*, 10 B.R. 506, 510; 79–2 U.S. Tax Cas. ¶ 9736 at 88730; 5 Bankr.Ct.Dec. (CRR) 1023, 1025 (Bkrtcy.1979).

*Dunne*, 32 B.R. at 188.

The court finds the reasoning of *Dunne* unpersuasive for a number of reasons. The *Dunne* court relies primarily on 26 U.S.C. § 6502(b) as support for its holding that a levy is not complete unless a notice of seizure is sent "to the owner or holder of rights to property levied upon."[14] Section 6502 establishes a statute of limitations for the collection of IRS debts by levy. It provides, in relevant part:

"**(a) Length of period.**—Where the assessment of any tax imposed by this title has been made within the period of limitation properly applicable thereto, such tax may be collected by levy or by a proceeding in court, but only if the levy is made or the proceeding begun—

(1) within 6 years after the assessment of the tax. . . .

. . . .

**(b) Date when levy is considered made.** —The date on which a levy on property or rights to property is made shall be the date on which the notice of seizure provided in section 6335(a) is given."

26 U.S.C. § 6502(b). However, there is good authority for the proposition that § 6502(b) applies only to levies upon tangible property and not to levies on intangible property, as intangible property is not susceptible to physical seizure. *See* Treas. Reg. § 301.6331–1(a)(1), 26 C.F.R. § 301.6331–1(a)(1) (1990); *G.M. Leasing*

*Corp. v. United States*, 429 U.S. 338, 350, 97 S.Ct. 619, 627, 50 L.Ed.2d 530 (1977); *United States v. Donahue Indust., Inc.*, 905 F.2d 1325, 1329–1330 (9th Cir.1990). In *G.M. Leasing*, the Supreme Court stated:

Levy upon tangible property normally is effected by service of forms of levy or notice of levy and physical seizure of the property. Where that is not feasible, the property is posted or tagged. Because intangible property is not susceptible of physical seizure, posting, or tagging, levy upon it is effected by serving the appropriate form upon the party holding the property or rights to property. *See* Treas.Reg. § 301.6331–1(a)(1), 26 C.F.R. § 301.6331–1(a)(1) (1976).[15]

*G.M. Leasing*, 429 U.S. at 350, 97 S.Ct. at 627. The Ninth Circuit, quoting this passage from *G.M. Leasing*, stated that:

Sections 6502(b) and 6335(a) of the statute determine when a levy is made on tangible property, and section 301.6331–1(a)(1) of the regulations determines when a levy is made on intangible property. In the case of tangible property, levy is make by physical seizure and notice thereof. In the case of intangible property, a levy is made for all purposes—including satisfaction of the statute of limitations set forth in 26 U.S.C. § 6502(a)(1)—by serving a notice of levy pursuant to 26 C.F.R. § 301.6311–1(a)(1).

*Donahue*, 905 F.2d at 1330.

The court finds the reasoning of *G.M. Leasing* and *Donahue* more persuasive than that of *Dunne*. The IRS cannot forcibly take possession of an intangible asset such as a bank account. Rather, possession may only be obtained when the party in possession knowingly relinquishes it. (e.g., when the bank transfers funds to the IRS).[16] In short, purely intangible proper-

---

**14.** Although a notice of levy must be served on "any person in possession of or obligated with respect to, property or rights to property subject to levy," Treas.Reg. § 301.6331–1(a)(1), the court again notes that a notice of seizure need only be sent to the "possessor" of personal property. 26 U.S.C. § 6335(a).

**15.** Treasury Regulation 301.6331–1(a)(1) states, in relevant part: "Levy may be made by serving a notice of levy on any person in possession of,

or obligated with respect to, property or rights to property subject to levy, including receivables, bank accounts, evidences of debt, securities, and salaries, wages, commissions, or other compensation."

**16.** Notably, the party in possession of levied-upon property is obligated to relinquish the property upon demand of the IRS. *See* 26 U.S.C. § 6332(a) ("Except as otherwise provided in subsection (b), any person in possession of

ty [17] may not be "taken," it must be "given." The party "giving up" such property (the party in possession), always has actual notice of its transfer. For such property, the notice of seizure requirements of the tax code (26 U.S.C. § 6335(a))—which obligate the IRS to serve notice only on the "possessor"—has no practical significance. Thus, common logic supports the position of *G.M. Leasing* and *Donahue:* the right to receive a notice of seizure is not a meaningful post-levy interest which a debtor may retain in intangible property.

In support of its holding that a notice of seizure may be viewed as protection of a taxpayer's continued (post-levy) interest in "seized" intangible property, the *Dunne* court cites *In re Bush Gardens*, 10 B.R. 506 (Bankr.D.N.J.1979). In *Bush Gardens*, the IRS levied upon and seized the liquor license of the debtor, which was engaged in the operation of a restaurant and liquor business. Although the liquor license was intangible property in one sense, it also had a physical component—the printed license—which (like a driver's license) was susceptible to physical seizure as well as sale. Indeed, the court there specifically held that the debtor's right to notice of seizure was necessary to protect its right of redemption and right to recover excess proceeds from the sale of the license. 10 B.R. at 510. Unlike the debtor in *Bush Gardens*, the debtors in *Dunne* and in the present case had no such interest in their assets—both cash equivalents incapable of being sold and lacking any physical component susceptible to seizure. Ironically, the *Bush Gardens* court also held that a "valid and effective levy under Section 6331(a) of the Internal Revenue Code of 1954, 26 U.S.C. 6331(a) is 'an absolute appropriation in law'...." 10 B.R. at 511, *quoting, United States v. Pittman*, 449 F.2d 623, 626 (7th Cir.1971). The *Bush Gardens* court ultimately held that the license levied-upon by the IRS was not property of the bankruptcy estate. 10 B.R. at 512.

In a footnote, the *Dunne* court concedes that:

> It could be argued that notice of seizure is merely administrative and does not substantively affect the Service's rights to the property. However, levy, as defined under I.R.C. § 6502, triggers not only the debtor's rights of redemption, but also the rights of any other party with an interest in the seized property. *See* I.R.C. §§ 6337 and 6532 (CCH 1981).

32 B.R. at 188, n. 9. Again, the *Dunne* court fails to recognize the distinction between saleable and cash equivalent property. As stated above, the right of redemption has no application to cash equivalent property. Thus, the *Dunne* court's application of the § 6337 statutory right of redemption to the bank account at issue in that case is unjustifiable.

The bankruptcy court below has supported its holding with a somewhat novel argument. Rather than attempting to identify a specific post-levy interest which the debtor retains in cash equivalent property, the court argues that an IRS levy—and indeed, all IRS collection procedures (except a plenary lien foreclosure action)—is nothing more than a provisional creditor remedy which is supplanted by the Bankruptcy Code and subordinate to the plenary jurisdiction of the Bankruptcy Court. The court states that the levy provisions of the Internal Revenue Code provide only for transfer of possessory interest—and not ownership interest—in the levied-upon property. The court goes on to say:

> So long as the secured creditor has only exercised the remedy of repossession and has not effected a transfer of title to the repossessed property, the Bankruptcy Code steps in to change the remedial scheme to encourage reorganization, all the while protecting the secured creditor's interest by affording it adequate protection. Under *Whiting Pools* the

---

(or obligated with respect to) property or rights to property subject to levy upon which a levy has been made shall, upon demand of the Secretary, surrender such property or rights....")

**17.** I.e., intangible property with no physical component for which physical seizure would effectively transfer possession of the property itself.

levying IRS is merely a secured creditor with a possessory lien, no more.

*Brown*, 106 B.R. at 549.

Although *Whiting Pools* appears, at first glance, to support the bankruptcy court's position, it is important to recognize that this decision only contemplates levies upon saleable assets. First, the property in question in *Whiting Pools* consisted solely of "tangible personal property—equipment, vehicles, inventory, and office supplies." 462 U.S. at 200, 103 S.Ct. at 2311. Second, after stating that an IRS levy is a provisional remedy which merely brings the property into the Service's legal custody, the court explained the reason for this statement:

> The IRS is obligated to return to the debtor any surplus from a sale, 26 U.S.C. § 6342(b). Ownership of the property is transferred only when the property is sold to a bona fide purchaser at a tax sale. [Citations omitted.] . . . Until such a sale takes place, the property remains the debtor's and thus is subject to the turnover requirement of § 542(a).

462 U.S. at 211, 103 S.Ct. at 2317. Because a cash equivalent may not be sold at a tax sale, ownership of this property obviously is not "transferred only when the property is sold to a bona fide purchaser at a tax sale." Logically, the debtor's ownership interest in cash equivalent property must transfer at some earlier point if it is to transfer at all. As discussed above, it is sensible to define the notice of levy as this point of demarcation in the case of cash equivalent property because the debtor retains no identifiable ownership interests in such property after this event. Finally, the *Whiting Pools* court also implied that in some situations, a tax levy or seizure may do more than merely transfer possession of the property to the IRS. "Of course, if a tax levy or seizure transfers to the IRS ownership of the property seized, § 542(a) may not apply." 462 U.S. at 209, 103 S.Ct. at 2315–16.

Despite this self-limiting language in *Whiting Pools*, the bankruptcy court below appears to take the position that a levy can never deprive a debtor of his interest in his property—whether tangible or intangible, saleable or cash equivalent—because a levy is merely a "provisional" remedy which does not address the merits of the underlying claim. *See Brown*, 106 B.R. at 550. Yet, the bankruptcy court also implicitly recognizes that the IRS can extinguish a debtor's interest in his property without obtaining an adjudication of rights in a "plenary" judicial proceeding such as a lien foreclosure suit. "This court need not determine when, under the administrative remedy provisions of levy and seizure, title to property does pass sufficiently so that it is no longer property of the estate." 106 B.R. at 551. In this statement, the bankruptcy court impliedly recognizes that a debtor's interest in his property is completely extinguished at some point during the IRS administrative collection process.

Unlike the bankruptcy court, this court finds it imperative to identify the point in the statutory IRS collection proceedings at which the debtor ceases to hold any interest in his property. As discussed above, a debtor's interest in saleable personal property is extinguished when the property is sold at a properly noticed IRS tax sale. After this point, the debtor may no longer redeem the property by paying off the tax assessment and, although the debtor may still retain an interest in the excess sale proceeds, he retains no interest in the property itself. A debtor's interest in cash equivalent property, by contrast, is extinguished when the IRS properly executes a levy on the property; after this point, the debtor retains no identifiable residual interest which could conceivably bring the property into the bankruptcy estate for the purposes of 11 U.S.C. § 541.

Finally, the court notes a strong public interest in the summary collection of tax debts. To protect this interest, Congress has granted the IRS considerable authority to expedite its procurement of taxes. The administrative levy is a powerful instrument of this authority which is necessary to help the IRS protect and collect public revenues. To hold that a debtor may evade an administrative IRS levy by declaring Chapter 13 bankruptcy and bringing into the bankruptcy estate funds to which he

has no identifiable interest would be to undermine the important Congressional objectives inherent in the collection provisions of the Internal Revenue Code.

For all the reasons discussed above, the court finds that after the IRS levy on Brown's bank accounts, Brown retained no interest in that cash equivalent property. Thus, the Brown's post-levy Chapter 13 petition did not bring this property into the bankruptcy estate under 11 U.S.C. § 541, and the property is not subject to a § 542 turnover order. The court therefore reverses the bankruptcy court's § 542 turnover order and the order requiring the Evanston Bank to transfer certain of the funds to Brown's children. The bankruptcy court's finding of adequate protection is therefore moot.

IT IS SO ORDERED.