**In re Ethel G. SMILEY, Debtor.**

**Bankruptcy No. 95–17576SR.**

United States Bankruptcy Court, E.D. Pennsylvania.

Dec. 5, 1995.

Leroy Wm. Etheridge, Philadelphia, PA, for debtor.

Thomas M. Rath, Special Asst. U.S. Atty., Philadelphia, PA, for I.R.S.

*OPINION*

STEPHEN RASLAVICH, Bankruptcy Judge.

This matter comes before the Court upon the Motion of the Debtor, Ethel G. Smiley, to enjoin Sharon Savings Bank from transferring funds in her bank account to the Internal Revenue Service ("IRS"). At issue is whether the IRS' post-petition demand for transfer of the Debtor's funds pursuant to a prepetition notice of levy violates the automatic stay. A hearing on the Motion was held October 2, 1995, at which time the Court ordered that the Debtor's funds remain with Sharon Savings Bank pending resolution of this dispute. The issue has subsequently been briefed by the parties and is ripe for decision. For the reasons which follow, the Court will deny the Motion.

**Background**

On or about August 30, 1995, the IRS mailed a notice of levy to Sharon Savings Bank attaching the Debtor's bank account based on a tax debt in the amount of $39,-888.77. Sharon Savings Bank received the notice of levy on or about September 7, 1995. At the time of service of the notice of levy, the Debtor had approximately $21,000 on deposit in her bank account.

On September 27, 1995, the Debtor filed a petition for relief under Chapter 13 of the Bankruptcy Code. The Debtor immediately notified the IRS and Sharon Savings Bank that she had filed a bankruptcy petition. The IRS, however, took the position that the Debtor's bankruptcy did not affect Sharon Savings Bank's obligation to transfer the funds in the Debtor's bank account to the IRS on or about September 28, 1995.[1] The Debtor therefore filed the instant Motion seeking to enjoin the transfer of her funds as a violation of the provisions of the automatic stay.

The Debtor takes the position that the money in her bank account is property of the estate pursuant to 11 U.S.C. § 541(a)(1) and

---

1. The authority of the IRS to levy and seize delinquent taxpayer's property is contained in 26 U.S.C. §§ 6331 and 6332. Under § 6332(c), banks are not required to surrender deposits to the IRS pursuant to a levy until 21 days after service of the levy. A bank in possession of property is obligated, however, to surrender that property upon demand to the IRS after the expiration of the 21 days, § 6332(d)(1), or face individual liability itself for the obligation of the delinquent taxpayer. § 6332(e).

that it remains property of the estate under *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983), and numerous subsequent lower court decisions interpreting *Whiting Pools.* Accordingly, the Debtor argues that the proposed postpetition transfer of the money in her bank account to the IRS would violate the provisions of the automatic stay.

The IRS, in response, takes the position that *Whiting Pools* is not controlling since it dealt with a levy on tangible property, while the property at issue here is cash in the Debtor's bank account, an intangible. The IRS cites a number of lower court decisions which rely on the distinction between saleable and nonsalable property as the determinative factor in finding that cash or cash equivalents levied upon prepetition do not become property of a debtor's estate.

## Discussion

Immediately upon the filing of a Chapter 13 petition, the automatic stay arises. It prohibits the commencement or continuation of any action by a creditor to collect a prepetition debt. In this respect, section 362 of the Bankruptcy Code provides, in part:

(a) [A] petition filed under section 301, 302 or 303 of this title ... operates as a stay of, applicable to all entities, of

(3) any act to obtain property of the estate or property from the estate or to exercise control over property of the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

(6) any act to collect, assess, or recover a claim against the debtor that arose before commencement of the case under this title.

■ Thus, to the extent that the funds in the Debtor's bank account became property of the bankruptcy estate upon the filing of the petition, they were protected by the automatic stay from postpetition transfer by Sharon Savings Bank to the IRS.

Section 541 of the Bankruptcy Code governs whether property becomes part of the bankruptcy estate upon the filing of a petition. Section 541 provides in relevant part:

(a) [The bankruptcy] estate is comprised of all the following property, wherever located:

(1) except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

■ In light of the foregoing, it is necessary to determine whether the Debtor possessed any interest, either legal or equitable, in the cash in her Sharon Savings Bank account at the time she filed her Chapter 13 petition. This issue normally arises in the context of a turnover action under 11 U.S.C. § 542(a). For example, in *United States v. Whiting Pools, supra,* the Supreme Court addressed the issue of whether a debtor had a sufficient legal or equitable interest in property that a secured creditor had seized pre-petition to warrant turnover pursuant to § 542.

*Whiting Pools* involved a tax levy on tangible personal property. The Court concluded that the property should be turned over to the debtor's bankruptcy estate because the debtor's interest in the property had not been extinguished pre-petition by the levy. The Court noted that IRS regulations provide for seizure and sale of tangible personal property, but that "[o]wnership of the property is transferred only when the property is sold to a bona fide purchaser at a tax sale." *Whiting Pools,* 462 U.S. at 211, 103 S.Ct. at 2317. The Court concluded, therefore, that the debtor retained a sufficient interest in the property to constitute it "property of the estate" and, thus, to warrant its turnover.

The Supreme Court recognized, on the other hand, that its reasoning did not necessarily encompass every tax levy. The high Court indeed recognized that there may be situations where a levy could effectively transfer ownership of property, *id.,* 462 U.S. at 210, 103 S.Ct. at 2316, such that the levied-upon property would not become property of a subsequently created bankruptcy estate.

■ Since the decision in *Whiting Pools,* courts have struggled with its application. Some courts have relied on the Supreme Court's reference to *Cross Electric Co., Inc. v. United States,* 664 F.2d 1218 (4th Cir.

1981), a case involving accounts receivable, in concluding that the Court intended its holding to extend beyond tangible property and encompass intangible property, like cash or cash equivalents. *See, e.g., In re Metro Press, Inc.,* 139 B.R. 763 (Bankr.D.Mass. 1992). This Court, however, concludes that the better reasoned decisions discussing the effect of a prepetition levy on cash and cash equivalents focus on the distinction between saleable and nonsalable property, rather than the distinction between tangible and intangible property, for *Whiting Pools* itself involved saleable property and did not address the effect of a prepetition levy against property not amenable to sale, specifically cash and cash equivalents. *In re Brown,* 126 B.R. 767, 771–72 (N.D.Ill.1991).

When the IRS levies upon a saleable asset, the owner of the subject property retains two significant interests in the property prior to its tax sale. *In re Ruggeri Electrical Contracting, Inc.,* 185 B.R. 750 (Bankr.E.D.Mich.1995); *In re McLaughlin,* 139 B.R. 9 (N.D.Ohio 1991); and *In re Rose,* 112 B.R. 12 (Bankr.E.D.Tex.1989). In the first instance, the property owner retains the right to redeem the property by paying his delinquent taxes. *See* 26 U.S.C. § 6337. He also retains the right to receive any surplus arising from the sale. *Id.* § 6342. Under *Whiting Pools,* these rights clearly represent enough of a residual interest in property to warrant turnover of the property to the bankruptcy estate.

The Court is convinced, however, that a levy on nonsalable assets, specifically cash or cash equivalents, is a different matter. After a levy on cash or a cash equivalent, the property owner no longer retains any significant interest in the cash or cash equivalent. As explained in *In re Eisenbarger,* 160 B.R. 542 (Bankr.E.D.Va.1993), a case involving a levy on a Chapter 13 debtor's commissions earned pre-petition:

> *When the IRS completes its levy upon nonsalable assets, the debtor is divested of any remaining property interests in them.* In such cases the rights of redemption and surplus are not applicable. It is difficult to

imagine that the debtor would seek to redeem cash or its equivalent by paying an equal or greater amount of cash (the amount of the taxes owed) or that a surplus would be generated by sale of the cash for more than its face value. *Professional Technical Servs., Inc. v. I.R.S. (In re Professional Technical Servs., Inc.),* 71 B.R. 946, 950 (Bankr.E.D.Mo.1987). Indeed, since the Service's purpose in selling levied property is to convert it to ready cash, the sale of the cash itself makes no sense. An IRS levy cannot, of course, exceed the amount of the tax liability involved. Thus the value of the cash or the cash equivalent levied upon can never exceed the tax debt. However, when the tax debt exceeds the amount of the cash levied upon, the taxpayer has no effective right of surplus.

*Id.* at 546 (emphasis added); *see also, In re Brown,* 126 B.R. at 773 (N.D.Ill.1991). *Accord In re Rose,* 112 B.R. at 14–15; *In re Ruggeri,* 185 B.R. at 752–53; *In re Abercrombie,* 156 B.R. 782, 785 (Bankr.N.D.Tex. 1993); *In re Sigmund London, Inc.,* 139 B.R. 765, 770 n. 2 (Bankr.E.D.N.Y.1992).

In the instant case, the rights of redemption or surplus are not applicable. The tax debt owed by the Debtor at the time of levy was $39,888.77. The Debtor had approximately $21,000 on deposit in her bank account. It is inconceivable that the Debtor would be willing to pay the IRS $39,888.77 to redeem her $21,000 bank account. Moreover, since the tax debt exceeds the funds in the Debtor's bank account, the Debtor has no effective right of surplus. Accordingly, the Debtor did not retain any identifiable interest in her bank account after the IRS levy on the account. It follows that the funds did not become property of the subsequently created estate. Since the funds did not become property of the estate, the postpetition demand of the IRS that Sharon Savings Bank transfer Debtor's funds to the IRS pursuant to a prepetition notice of levy does not violate the provisions of the automatic stay under 11 U.S.C. § 362(a). The Court therefore has no authority to enjoin Sharon Savings Bank from transferring them to the IRS.[2] Accordingly, the Debtor's Motion will be denied.

---

**2.** In her post-hearing memorandum of law, the

Debtor for the first time suggests that the lien of

An Order consistent with the foregoing conclusions accompanies this Opinion.

the IRS against her bank account can be avoided pursuant to 11 U.S.C. § 547. This issue is not properly before the Court at this time. Bankruptcy Rule 7001 requires that an action under § 547 be brought by adversary complaint. Moreover, the Debtor bears the burden to prove the avoidability of a transfer under § 547(b). 11 U.S.C. § 547(g). The Debtor cannot sustain her burden of proof nor resist the proposed transfer of funds merely by suggesting in her post-hearing memorandum of law that the lien of the IRS may be avoidable.